UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-62066-CIV-MARRA

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

vs.

FRANK A. SPINOSA,

      Defendant.

_____/

**OPINION AND ORDER**

      This cause is before the Court upon Defendant's Motion to Dismiss Amended Complaint. (DE 9). Plaintiff responded. (DE 13). Defendant did not file a reply, and the time to do so has expired. The Court has considered the briefing and is otherwise fully advised in the premises.

**I. Background**

      This case relates to the Ponzi scheme perpetrated by now-convicted Scott Rothstein ("Rothstein"). The operative Amended Complaint alleges that the scheme was perpetrated through the sale of fake discounted settlements which Rothstein ran through his law firm Rothstein, Rosenfeld and Adler, PA ("RRA"). Am. Compl. ¶ 2 (DE 5). Rothstein told investors that RRA held in trust accounts fully funded settlement payments paid by defendants in lawsuits. *Id.* RRA maintained the trust accounts at Commerce Bank, where Defendant Spinosa worked, and which later was acquired by TD Bank, N.A. ("TD Bank"),. *Id.*, ¶¶ 6, 18, 25. Rothstein also stated to investors that defendants in the lawsuits had paid in full their settlement funds, but that the plaintiffs in the lawsuits would be receiving periodic payments. The plaintiffs entitled to the periodic payments would assign their monthly payments to investors in exchange for discounted immediate cash

disbursements.  *Id.*, ¶ 2.  These statements were false.  RRA's trust accounts typically held less than $100.  *Id.*, ¶ 18.  In exchange for the discounted payments by the investors, Rothstein provided them with promissory notes issued by the RRA for the full settlement amount.  *Id.*, ¶ 15.

Plaintiff, the Securities and Exchange Commission ("SEC"), alleges that Defendant Spinosa made misrepresentations to the investors to aid Rothstein's scheme.  In particular, the SEC avers that Defendant Spinosa executed letters stating that the accounts containing the settlement funds were restricted to allow distribution of funds only to a particular investor on Rothstein's direction ("lock letters"), and made false statements to investors in telephone and in-person meetings regarding the existence of the funds.  Thus, the SEC brought suit alleging: fraud in violation of Section 17(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1) (Count I); fraud in violation of Section 17(a)(2) and 17(a)(3) of the Securities Act of 1933, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3) (Count II); fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (Count III); and aiding and abetting violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (Count IV).

Defendant Spinosa argues that the Amended Complaint should be dismissed because it fails to plead fraud with sufficient particularity and because it fails to allege facts supporting all necessary elements of the causes of action.

## II. Legal standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a).  The Supreme Court has held that "[w]hile a complaint attacked

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Overall, a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (internal quotation omitted); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

**III. Discussion**

**1. Particularity of fraud allegations**

Defendant Spinosa argues that the SEC failed to plead fraud with sufficient particularity.  The Court agrees.  Rule 9(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Further, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*  This Rule "serves an important purpose in fraud

actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) *quoting Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks omitted). That stated, the Court must not allow the application of Rule 9(b) to vitiate the overall concept of notice pleading.  *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  This Rule is satisfied if the complaint sets forth (1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendants' gain due to the alleged fraud.  *See id.* (quoting *Brooks*, 116 F.3d at 1371).

Here, the SEC alleges that Defendant Spinosa signed "lock letters" on August 17 and 25, 2099, September 9, 16, 18 and 24, 2009, and October 1 and 15, 2009 which stated that "all funds contained in the above accounts shall only be distributed upon [either Rothstein's or Rothstein's or his partner's] instructions and shall only be distributed to [the investor]" at the investor's designated account.  Am. Compl. ¶¶ 25-27.  Each "lock letter" further said that "the letter is not meant to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances." *Id.* However, the SEC does not identify the addressees or recipients of the letters.

The SEC further alleges that Defendant Spinosa knew that these statements were false, and that Rothstein could transfer funds from the accounts without restriction.  *Id.*, ¶ 29. Moreover, the SEC alleges that Defendant Spinosa continued to issue "lock letters" even after he has been notified by another TD Bank employee in late August 2009 that any "lock" instructions associated with the

accounts would have no practical effect.  *Id.*

Also, the SEC asserts that Defendant Spinosa made oral misrepresentations on several occasions.  Defendant Spinosa confirmed the content of a "lock letter" to an investor in a conference call on August 17, 2009 and again in person on September 25, 2009.  *Id.*, ¶¶ 31, 35-36.  Additionally, Defendant Spinosa represented to the investors on August 17, 2009, September 14 and 25, 2009 that the RRA trust accounts designated for those investors held $20 million dollars or more when the actual balance in the account at that time was $100.  *Id.*  With respect to the recipients of the oral misstatements, the SEC specifies that these were clients located in Texas and Delaware, but again does not identify the investors.   Lastly, the SEC alleges that Defendant Spinosa received compensation and bonuses from his employer based, in part, on the size and volume of accounts at the branches he managed, including Rothstein's and RRA's 4 operating and 22 attorney trust accounts that Rothstein used to operate the Ponzi scheme.  *Id.*, ¶ 17, 21.

Thus, the SEC has alleged the exact statements Defendant Spinosa made, the dates on which he made the statements, the way in which the statements were misleading, and the benefit Defendant Spinosa received as a result.  However, the SEC has not identified the recipients of the statements.  Defendant Spinosa argues that the letters were addressed to RRA.  In fact, the Amended Complaint may be read this way as well.

The SEC argues that it is not required to identify the investors because reliance on misrepresentations, loss causation, and damages are not elements of an SEC enforcement action, *see S.E.C. v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1244 (11th Cir. 2012) ("'Justifiable reliance,' however, is not an element of an SEC enforcement action [under § 10(b) or Rule 10b–5] because Congress designated the SEC as the primary enforcer of the securities laws, and a private plaintiff's

5

'reliance' does not bear on the determination of whether the securities laws were violated, only whether that private plaintiff may recover damages"). However, the Court is not imposing on the SEC a requirement to establish elements it is not required to plead or prove under the law. Rather, it is necessary to identify the recipients to put Defendant Spinosa on notice of the exact statements upon which the SEC's claims are based. The SEC will have leave to amend its pleading to include the names of the recipients of the misrepresentations, or to make other allegations that would allow Defendant to identify the exact statements on which the SEC bases its fraud claims.

**2. Interstate commerce**

Defendant Spinosa argues that the alleged wrongful conduct occurred purely within the state of Florida, and that the SEC did not adequately allege the use of "interstate commerce." The Court disagrees.

Both the Securities Act of 1933 and the Securities Exchange Act of 1934 prohibit the use of "interstate commerce" in committing certain acts. 15 U.S.C.A. § 77q(a); 15 U.S.C. §78j. Under the Securities Act, '[t]he term 'interstate commerce' means trade or commerce in securities or any transportation or communication relating thereto among the several States." 15 U.S.C.A. § 77b(a)(7) (West). Under the Exchange Act, "[t]he term "interstate commerce" means trade, commerce, transportation, or communication among the several States," and includes "intrastate use of (A) any facility of a national securities exchange or of a telephone or other interstate means of communication, or (B) any other interstate instrumentality." 15 U.S.C.A. § 78c(a)(17) (West). Use of the mail, telephone, and internet satisfies these requirements. *See S.E.C. v. Reynolds*, 1:06-CV-1801-RWS, 2010 WL 3943729, at *3 (N.D. Ga. 2010) (all elements of a violation of section 5(a) of the Securities Act were established where defendant used mail, telephone and internet to sell

securities); *Gower v. Cohn*, 643 F.2d 1146, 1151 (5th Cir. 1981) (even an intrastate use of an instrumentality of interstate commerce, such as of the telephone, may satisfy the requirement under the Exchange Act); *Carran v. Morgan*, 510 F. Supp. 2d 1053, 1060 n. 7 (S.D. Fla. 2007) (same); *S.E.C. v. GMC Holding Corp.*, 608-CV-275-ORL-28KRS, 2009 WL 506872, at *4 (M.D. Fla. 2009) (using the internet to make material misrepresentations in connection with a sale of securities satisfies the "interstate commerce" requirement of the Exchange Act).

Here, the SEC alleged that Defendant Spinosa received the draft language for the "lock letters" from Rothstein by e-mail, and that Defendant Spinosa made misrepresentations to an investor located in Texas in a conference call. Am. Compl., ¶¶ 26, 31. Accordingly, the SEC has made sufficient allegations of Defendant Spinosa's use of the interstate commerce.

**3. Count I**

In Count I, the SEC alleges that Defendant Spinosa committed fraud in violation of Section 17(a)(1) of the Securities Act, 15 U.S.C. §77q(a)(1), when he made misrepresentations in the "lock letters" and in meetings. Defendant Spinosa argues that the SEC has not pled the requisite scienter. The Court agrees in part.

"To show a violation of § 17(a)(1), the SEC must prove (1) a material misrepresentation or materially misleading omission, (2) in the offer or sale of a security, (3) made with scienter."[1]

---

[1] Section 17(a) of the Securities Act of 1933 codified in Section 77q(a) of Title 15 states:
(a) Use of interstate commerce for purpose of fraud or deceit

It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

---

(1) to employ any device, scheme, or artifice to defraud.

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C.A. § 77q(a) (West).

Further, under the Securities Act,

The term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C.A. § 77b (West).

Under the Securities Exchange Act of 1934 the definition of a "security" also includes "any note." 15 U.S.C.A. § 78c(a)(1) (West); *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990).

In this case, the SEC alleges that Rothstein provided each investor with a promissory note issued by the RRA promising to pay to the investor the settlement payments that were due to be distributed from the RRA trust accounts. Am. Compl., ¶ 15. The presumption is that any "note" is a "security." *Reves*, 494 U.S. at 65 (1990). The presumption can be rebutted by a showing that the note bears a strong resemblance to such instruments as "the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a 'character' loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized)." *Id.* Thus, in this case, the notes in

8

*S.E.C. v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1244 (11th Cir. 2012).  Knowing misconduct or severe recklessness satisfy the scienter requirement.  *S.E.C. v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir. 1982).  "Proof of recklessness would require a showing that the defendant's conduct was an extreme departure of the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *S.E.C. v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir. 1982) (quoting *Sec. & Exch. Comm'n v. Sw. Coal & Energy Co.*, 624 F.2d 1312, 1321 (5th Cir. 1980)).

Here, the scienter was pled sufficiently with respect to the "lock letters" and the oral confirmations of the restrictions of the accounts.  The SEC alleges that when Defendant Spinosa executed the letters which stated that conveyances from the accounts were irrevocably restricted, he knew that Rothstein could transfer the funds from the accounts without any restrictions through the online banking system.  Am. Compl., ¶ 29.  Further, even after another TD Bank employee advised Defendant Spinosa in late August 2009 that any "lock" instructions would have no practical effect, Defendant Spinosa issued more "lock letters."  *Id.*  Taken as true, the allegations establish that there was no legitimate purpose for Defendant Spinosa's actions.  Thus, Defendant Spinosa's knowledge of Rothstein's Ponzi scheme may be inferred from his conduct.

Even if the letters where addressed to RRA rather than to the investors, which is not clear from the Amended Complaint, the SEC alleges that Defendant Spinosa executed the letters and gave

---

question may qualify as "notes" and thus as "securities" under the Acts.  Alternatively, the notes in question may qualify as "investment contracts."  *See S.E.C. v. Merch. Capital, LLC*, 483 F.3d 747, 754 (11th Cir. 2007) (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946)) ("[a]n investment contract is "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party").

them to Rothstein for distribution to the investors, and also made oral representations to the investors confirming the information contained in the letters.   Thus, the SEC has adequately pled the scienter with respect to the "lock letters," and Count I can proceed on this basis.

In contrast, the SEC has not made adequate factual allegations relating to the oral misrepresentations of the account balances.   The SEC alleges that when Defendant Spinosa represented to the investors that the accounts held more than $20 million, the actual balances were no more than $100.  *Id.*, ¶¶ 37-38.  The SEC does allege that Defendant Spinosa had full access to the accounts.  *Id.*, ¶ 34.

However, with respect to the September 14, 2009 misrepresentation, the allegation is that Defendant Spinosa told the investor that the $20 million did not appear as available because TD Bank was holding the funds in its "Treasury Direct Wire queue" for the account, and that this information was false.  *Id.*  However, the SEC does not state that Defendant Spinosa knew this information to be false, or that in providing this information he departed from the standards of care in an extreme fashion presenting a danger of misleading the investors that was either known to Defendant Spinosa or was so obvious that he must have been aware of it.  The SEC will have leave to amend its pleading, if it wishes to base Count I on the alleged misrepresentations of the account balances as well.

**4. Count II**

In Count II, the SEC alleges that Defendant Spinosa committed fraud in violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §77q(a)(2) and 77(q)(a)(3), when he made misrepresentations in the "lock letters" and in meetings.  Defendant argues that Count II cannot succeed because the SEC failed to allege that he received any money as a result of the fraud.  The

10

Court disagrees.

"[T]o establish a violation of § 17(a)(2) or 17(a)(3), the SEC must show (1) a material misrepresentation or materially misleading omission, (2) in the offer or sale of a security, (3) made with negligence." *S.E.C. v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1244 (11th Cir. 2012). Section 17(a)(2) prohibits obtaining money "directly or indirectly" by means of any untrue statements, and section 17(a)(3) prohibits engaging "directly or indirectly" in any transaction which operates as a fraud upon the purchaser. 15 U.S.C.A. § 77q(a)(2), (3) (West).

The SEC alleges that "Spinosa received compensation and bonuses from TD Bank and Commerce Bank based, in part, on the size and volume of accounts at branches he managed, including the Rothstein and RRA accounts," and that "[t]he Rothstein and RRA accounts were the largest within the region at TD Bank." Am. Compl., ¶ 21 (DE 5). Some courts have held that receiving increased compensation from the employer as a result of fraud could qualify as a violation of Section 17(a)(2). *S.E.C. v. Stoker*, 865 F. Supp. 2d 457, 463 (S.D.N.Y. 2012) ("it is sufficient under Section 17(a)(2) for the SEC to allege that [defendant] obtained money or property for his employer while acting as its agent, or, alternatively, for the SEC to allege that [defendant] personally obtained money indirectly from the fraud" when defendant's compensation increased dramatically around the time of the alleged fraud); *S.E.C. v. Mudd*, 885 F. Supp. 2d 654, 670 (S.D.N.Y. 2012) (bonus based on the company's performance as well as on defendant's performance qualified as "obtaining money under section 17(a)(2)"). Other courts have found that allegations were insufficient to state a claim under section 17(a)(2) when no receipt of money or property by the defendant was alleged. *See S.E.C. v. Syron*, 934 F. Supp. 2d 609, 639 (S.D.N.Y. 2013) (holding that the SEC failed to allege that defendants personally gained money or property from the employer's

11

stock offering, but acknowledging that liability may exist when the money is obtained "indirectly" or in a "highly roundabout manner"); *SEC v. Daifotis*, No. C 11–00137 WHA, 2011 WL 2183314, at *10 (N.D.Cal. June 6, 2011); *S.E.C. v. Burns*, CIV. 84-0454, 1986 WL 36318, at *4 (S.D. Cal. 1986).

Here, the SEC alleges that Defendant Spinosa received increased compensation based on the size of Rothstein's and RRA's accounts.  In the statute, "indirectly" modifies "to obtain money or property."   The  plain meaning of "indirectly obtaining money" may include receiving increased compensation based on the volume of business enlarged by the alleged fraudulent activity.  Thus, the Court finds that the SEC has sufficiently pled a violation of Section 17(a)(2) of the Securities Act.  *Cf. Syron*, 934 F. Supp. 2d at 639 (the SEC did not allege that defendants profited from the employer's stock offering and the alleged fraud).

Defendant Spinosa makes no arguments pertaining to Section 17(a)(3), and it is clear that the SEC has alleged that Defendant Spinosa engaged in the transactions or the course of business which operated as a fraud on the purchasers of the promissory notes.

**5. Count III**

In Count III, the SEC alleges that Defendant Spinosa committed fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b),[2] and Rule 10b-5, 17 C.F.R. §

---

[2]Section 10(b) states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange–
. . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any

240.10b-5.[3]  "The scope of liability under Section 10(b) and Rule 10b-5 is the same." *S.E.C. v.*

*Merch. Capital, LLC*, 483 F.3d 747, 766 n. 17 (11th Cir. 2007).  The elements of a section 10(b)

violation in an SEC enforcement action are "(1) material misrepresentations or materially misleading

omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter." *Id.*

Section 10(b) and Rule 10b–5 require "a showing of either an 'intent to deceive, manipulate, or

defraud,' or 'severe recklessness.'" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir.

2008).

Defendant Spinosa adopts the arguments he raised in relation to Count I.  Accordingly, the

same ruling applies here.

---

securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C.A. § 78j(b) (West).

[3]Rule 10b-5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

**6. Count IV**

In Count IV, the SEC alleges that Defendant Spinosa aided and abetted Rothstein's violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  Defendant Spinosa argues that Count IV must be dismissed because the allegations do not establish that he knew of Rothstein's Ponzi scheme.  The Court disagrees.

"For aiding-and-abetting liability under the federal securities laws, the SEC must establish the following three elements: (1) a primary or independent securities law violation was committed by a party other than the aiding-and-abetting party; (2) the aider and abettor was aware or knew this [and that] his role was part of an overall activity that was improper (scienter, as it relates to violations of Section 10(b) of the Exchange Act and Rule 10b–5); and (3) the aider and abettor knowingly and substantially assisted the conduct that constitutes the violation.  *S.E.C. v. Huff*, 758 F. Supp. 2d 1288, 1354 (S.D. Fla. 2010) aff'd, 455 F. App'x 882 (11th Cir. 2012) (citing *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1009–10 (11th Cir.1985)); *S.E.C. v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1306 (S.D. Fla. 2007).

The allegations here support an inference that Defendant Spinosa knew of Rothstein's wrongdoing because, if the Court accepts the allegations as true, as it must at this stage, there is no legitimate purpose for Defendant Spinosa's actions.

**IV. Conclusion**

Accordingly,  Defendant's Motion to Dismiss Amended Complaint (DE 9) is **GRANTED IN PART and DENIED IN PART**.  Within 20 days from the date of this Order, Plaintiff may

amend the Complaint to comply with the requirement to plead fraud with particularity.

       **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida,

this 30th  day of June, 2014.

_____
KENNETH A.  MARRA
United States District Judge