**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

**Background – Rothstein's Ponzi Scheme**

1. Scott Rothstein is currently in federal prison for operating a Ponzi scheme through the sale of fake discounted settlements using his law firm Rothstein, Rosenfeld and Adler, PA ("RRA").[1]

2. Rothstein operated the Ponzi scheme by telling investors that he had settled potential lawsuits on behalf of plaintiffs who would assign their periodic settlement payments in exchange for a discounted immediate cash payment.[2]

3. Rothstein explained to prospective purchasers that the defendants had deposited the full amount of the settlements in RRA trust accounts, but the settlement agreements required that the plaintiffs receive periodic payments to ensure compliance with the settlements' confidentiality terms.[3]

4. Rothstein provided investors in multiple states[4] with a promissory note his firm issued in exchange for the discounted lump sum payments each investor made to purchase the purported settlements.[5]

5. Contrary to Rothstein's representations, the purported legal settlements and the plaintiffs and defendants did not exist.[6]

6. Rothstein simply used the funds investors paid to purchase the settlements to make the purported settlement payments that were due to other investors.[7]

7. At the end of October 2009, Rothstein's scheme collapsed, and shortly afterwards he surrendered to federal authorities. He pled guilty to federal charges related to the operation of the Ponzi scheme and was sentenced to 50 years in federal custody.[8]

Rothstein's Relationship with TD Bank and Spinosa

---

[1] Exhibit 1 (Spinosa Answer) at ¶¶ 2, 8.

[2] Exhibit 2 (Information against Scott Rothstein) at 5; Exhibit 3 (Rothstein Guilty Plea) at 9-10; Exhibit 4 (Deposition Transcript of Melvyn Klein in Coquina Litigation (Apr. 1, 2011)) at 48:21-52:4; Exhibit 5 (Deposition Transcript of Barrie Damson in Coquina Litigation (Mar. 31, 2011)) at 28:10-29:1, 29:22-30:14, 33:21-35:19.

[3] Exhibit 3 at 9-10; Exhibit 6 (Deposition Transcript of Scott Rothstein in Razorback Litigation (Dec. 13, 2011)) at 272:25-274:18.

[4] Exhibit 3 at 8-10.

[5] Exhibit 3 at 9-10; Exhibit 7 (Deposition Transcript of Scott Rothstein in RRA Bankruptcy (Dec. 12, 2011)), at 47:4-18, 49:21-25.

[6] Exhibit 3 at 9-10; Exhibit 6 at 201:3-202:15; Exhibit 7 at 72:3-25.

[7] Exhibit 6 at 180:9-16, 201:12-20.

[8] Exhibit 1 at ¶¶ 2, 8; Exhibit 7 at 6:1-11.

8. Rothstein and RRA maintained accounts at TD Bank, N.A. ("TD Bank").[9]

9. Rothstein opened attorney trust accounts and RRA operating accounts at TD Bank and Commerce Bank, which TD Bank acquired.[10]

10. Rothstein used RRA's operating accounts to receive funds from investors in his purported legal settlements and to operate his law firm, and the attorney trust accounts purportedly to receive money from settling defendants and to make payments to settlement investors.[11]

11. Frank A. Spinosa was a Regional Vice President for TD Bank throughout the life of the Rothstein and RRA accounts at TD Bank.[12]

12. Spinosa was the relationship manager for all of Rothstein and RRA's accounts at TD Bank beginning in approximately October 2008 until the time of his termination by TD Bank in November 2009.[13]

13. Spinosa was the account manager for Rothstein and RRA's accounts and had full access to the account balances at all times.[14]

14. Rothstein and RRA were considered to be important customers at TD Bank and one of Spinosa's most important clients.[15]

15. Spinosa received $50,000 to $75,000 in cash from Rothstein in exchange for assisting Rothstein with his scheme,[16] and he also received bonuses and compensation based in part on the size of accounts that he supervised.[17]

---

[9] Exhibit 1 at ¶¶ 2, 17.

[10] Exhibit 6 at 201:3-202:15.

[11] *Id.* at 202:3-15.

[12] Exhibit 1 at ¶ 3; Exhibit 8 (Deposition Transcript of Roseanne Caretsky in RRA Bankruptcy (May 19, 2010)) at 11:1-8; Exhibit 9 (Deposition Transcript of Roseanne Caretsky in Razorback Litigation (July 19, 2011)) at 218:1-4; Exhibit 10 (Coquina Trial Transcript of Roseanne Caretsky (Nov. 29, 2011)) at 66:21-22; Exhibit 11 (Coquina Trial Transcript of Wende Litterio (Nov. 28, 2011)) at 157:17-22, 158:22-159:2.

[13] Exhibit 12 (Spinosa Request for Admissions) ¶ 1; Exhibit 11 at 165:5-11; Exhibit 8 at 17:24-23:15, 52:16-53:2; Exhibit 10 at 66:18-20; Exhibit 27 at 155:8-157:22, 164:23-165:11); Exhibit 9, Kerstetter, at 143:14-24.

[14] Exhibit 12 at ¶ 2; Exhibit 13 (Deposition Transcript of Frank A. Spinosa (Sept. 16, 2014)) at 118:12-18; Exhibit 11 at 165:5-11; Exhibit 8 at 17:24-18:17, 52:16-53:2; Exhibit 10 at 66:18-20; Exhibit 27 at 155:8-157:22, 164:23-165:11).

[15] Exhibit 8 at 43:15-44:15; Exhibit 14 (Deposition Transcript of Menachem Lifshitz in Emess Capital Litigation (Mar. 27, 2012)) at 192:16-20; Exhibit 8, Caretsky Deposition at 43:17-20.

[16] Exhibit 34 (Rothstein December 13, 2011 Deposition) at 216:9-19.

[17] Exhibit 12 at ¶ 3; Exhibit 13 at 122:3-9.

**TD Bank and Spinosa's Roles in Rothstein's Ponzi Scheme**

16. Rothstein believed that TD Bank played a "critical" role in his Ponzi scheme.[18]

17. Rothstein led investors to believe that he had set up a separate trust account for each investor, and that the defendants fully funded these trust accounts with the settlement proceeds prior to the investors' purchases of the promissory notes.[19]

18. The trust accounts typically held approximately $100.[20]

19. When payments were due to settlement investors, Rothstein transferred enough money from RRA's main operating account into the investor's trust account to make the scheduled payment.[21]

20. Between RRA's law firm operations and Rothstein's Ponzi scheme, funds flowed through RRA's operating and trust accounts over the life of Rothstein's Ponzi scheme.[22]

21. Rothstein often emailed and spoke directly with Spinosa regarding Rothstein and RRA's TD Bank accounts.[23]

22. Spinosa knew that Rothstein's structured settlement investment was a fraudulent scheme during the time that he managed Rothstein and RRA's TD Bank accounts.[24]

**Spinosa's Misrepresentations and Omissions to Investors**

23. Spinosa was in charge of the accounts and knew that investors had no independent way to verify the account balances, and received requests for assurances from TD Bank that the trust accounts were fully funded as Rothstein claimed and that their funds were protected.[25]

24. Investors therefore sought assurances from TD Bank that the trust accounts were fully funded as Rothstein claimed, and that their funds were protected.[26]

25. The main purpose of these representations was to give investors a false sense of security with respect to their actual and prospective investments.[27]

26. Rothstein believed that Spinosa was a "good soldier" in providing many of these

---

[18] Exhibit 6 at 182:11-183:25.

[19] *Id.* at 202:3-15.

[20] *Id.* at 201:3-11.

[21] *Id.* at 201:3-20.

[22] *Id.*

[23] Exhibit 1 at ¶ 20.

[24] Exhibit 12 at ¶ 7. *Coquina v. TD Bank*, 760 F.3d at 1311-1312 (11th Cir. 2014).

[25] Exhibit 13 at 62:24-63:13; Exhibit 12 at ¶ 33. *See infra* Statements 12-13 and cites thereto.

[26] Exhibit 15 (Deposition Transcript of Kathleen White in Coquina Litigation (Apr. 7, 2011)) at 250:4-254:22.

[27] Exhibit 6 at 187:13-16, 428:19-430:5.

misrepresentations directly to investors about the purported restrictions on the TD Bank accounts.[28]

27. Some of these representations were made in writing in the form of "lock letters" to investors that Spinosa signed at the request of Rothstein dated August 17, 2009 (the "August 17 Lock Letter"), August 25, 2009 (the "August 25 Lock Letter"), September 9, 2009 (the "September 9 Lock Letter"), and September 16, 2009 (the "September 16 Lock Letter").[29]

28. Rothstein asked Spinosa to sign Lock Letters purportedly restricting transfers in order to give investors a false sense of security.[30] On August 17, 2009 Rothstein sent an email to Spinosa asking him to sign Lock Letters on TD Bank letterhead to investors, stating funds could only be distributed to the investor,[31] and this process continued.[32] Litterio, Spinosa's assistant, recalls preparing approximately five Lock Letters for Spinosa on TD Bank letterhead.[33] Rothstein would send Spinosa an email with the contents of the letter, which Litterio would then cut and paste onto TD Bank letterhead for Spinosa's signature.[34] Spinosa also emailed the letters to his co-worker.[35]

29. After receipt of the letters, Spinosa co-signed them on behalf of TD Bank on a signature line stating he "agreed to" the statements in the letters despite knowing that they were false.[36]

30. Spinosa sent these four executed letters to Rothstein knowing that Rothstein would distribute them to the investors whose accounts Spinosa claimed in the letters to have purportedly locked and who would rely on the statements in the letters.[37] Rothstein then sent them to the

---

[28] *Id.* at 190:16-22.

[29] Exhibit 16 (August 17 Lock Letter, Exhibit 4 to Exhibit 13); Exhibit 17 (August 25, 2009 Lock Letter, Exhibit 5 to Exhibit 13); Exhibit 18 (September 9, 2009 Lock Letter, Exhibit 6 to Exhibit 13); Exhibit 19 (September 16, 2009 Lock Letter, Exhibit 7 to Exhibit 13); Exhibit 12 at ¶¶ 10-12, 17 (authenticating Exhibits 16-19); Exhibit 13 at 9:4-13:20 (Concerning Exhibits 16-19); Exhibit 6 at 187:23-189:10. *See also* Federal Rule of Evidence 901(b)(4); *Coquina v. TD Bank*, 760 F.3d at 1311-1312 ("The evidence shows that Spinosa signed "lock letters" falsely claiming that the money held in a TD Bank trust account could be disbursed only to Coquina.").

[30] Exhibit 6 at 187:13-188:13.

[31] Exhibit 35 (August 17 email exchange; Rothstein deposition exhibit 78); Exhibit 41 at 552:; Exhibit 41 at 552:24-557:6 (discussing deposition exhibit 78, Exhibit 35 hereto).

[32] Exhibit 39 (Composite of Rothstein-Spinosa emails and Lock Letters, Spinosa Deposition Exhibit 22); Exhibit 13 (Concerning Exhibit 22 thereto).

[33] Exhibit 27, Litterio Deposition, at 92:10-101:13.

[34] *Id*.

[35] Exhibit 36, Caretsky Deposition, 121:25-123:24.

[36] Exhibits 16-19; Exhibit 13 at 9:4-13:20.

[37] Exhibits 16-19; Exhibit 12 at ¶¶ 9, 19; Exhibit 13 at 9:4-13:20, 75:2-24, 86:4-87:8.

4

investors.[38]

31. Spinosa signed the August 17 Lock Letter for investor Coquina Investments and stated, "all funds contained in the above account shall only be distributed upon [Rothstein's] instructions and shall only be distributed to Coquina Investments, a Texas General Partnership…." The August 17 Lock Letter further emphasized that the "letter is not meant to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[39]

32. Spinosa signed the August 25 Lock Letter for investor Ira Sochet Revocable Inter Vivos Trust, and stated "all funds contained in the above account shall only be distributed upon [Rothstein's] instructions and shall only be distributed to Ira Sochet Revocable Inter Vivos Trust…." The August 25 Lock Letter further emphasized that the "letter is not meant to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[40]

33. Spinosa and Rothstein signed the September 9 Lock Letter for investor Emess Capital, LLC and stated "all funds contained in the above account shall only be distributed upon [Rothstein's] instructions and shall only be distributed to Emess Capital, LLC…." The September 9 Lock Letter further emphasized that the "letter is not meant to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[41]

34. Spinosa and Rothstein signed the September 16 Lock Letter for investor Ira Sochet Revocable Inter Vivos Trust and stated "all funds contained in the above account shall only be distributed upon [Rothstein] or [Rothstein's law partner] Stuart Rosenfeldt's instructions and shall only be distributed to" a bank account "for further credit to the Ira Sochet Revocable Inter Vivos Trust…." The September 16 Lock Letter further emphasized that the "letter is not meant to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[42]

35. There were never any transfer restrictions on the Rothstein or RRA accounts.[43]

---

[38] Exhibit 15 at 203:8-17.

[39] Exhibit 16; Exhibit 12 at ¶ 10; Exhibit 13 at 8:24-9:10.

[40] Exhibit 17; Exhibit 12 at ¶ 11; Exhibit 13 at 9:18-24.

[41] Exhibit 18; Exhibit 12 at ¶ 17; Exhibit 13 at 10:3-12:9.

[42] Exhibit 19; Exhibit 12 at ¶ 12; Exhibit 13 at 12:13-13:1.

[43] Exhibit 8 at 139:25-144:19, 205:15:-209:21, 215:2-216:10; Exhibit 10 at 183:15-194:24; Exhibit 13 at 19:17-23, 21:18-24, 23:16-22, 104:11-105:4, 105:16-25; Exhibit 36 at 121:25-123:24 (Spinosa only

36. Spinosa knew that the August 17 Lock Letter, August 25 Lock Letter, September 9 Lock Letter, and September 16 Lock Letter were false when he signed them, in part because he knew that there were no procedures at TD Bank to lock accounts or restrict distributions (e.g. Rothstein could transfer funds online).[44]

37. From no later than September 18, 2009 until at least October 15, 2009, Spinosa prepared and executed at least seven additional lock letters at Rothstein's request with similar false statements regarding restrictions on investor accounts.[45]

38. Rothstein emailed the draft language for Spinosa to incorporate into these additional lock letters, which Spinosa executed on TD Bank letterhead and on behalf of TD Bank.[46]

39. Spinosa addressed each of these letters to Rothstein knowing that Rothstein was distributing the letters to the investors whose accounts Spinosa claimed to have locked in the letters.[47]

40. Spinosa prepared and executed a letter dated September 18, 2009 for investor Coquina Investments that stated "all funds contained in the above referenced account shall only be distributed upon [Rothstein's or Rothstein's partner] instructions and shall only be distributed to Coquina Investments, a Texas General Partnership" at the investor's designated bank account. In this letter, Spinosa further emphasized that "the letter is understood not to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[48]

41. Spinosa prepared a second letter dated September 18, 2009 for investor Ira Sochet Revocable Inter Vivos Trust that stated "all funds contained in the above referenced account shall

---

instructed the bank to put a note on the account to call him if someone inquired about the account); Exhibit 6 at 189:11-189:22; Exhibit 41 at 488:25-489:13.

[44] Exhibit 13 at 10:19-12:9, 69:17-24, 75:25-76:7, 104:3-108:10, 114:13-115:2, 130:5-12; Exhibit 12 at ¶¶ 21-22; Exhibit 6 at 189:11-190:22; Exhibit 41 at 488:25-489:13.

[45] Exhibit 20 (September 18, 2009 Letter, Exhibit 8 to Exhibit 13); Exhibit 21 (September 18, 2009 Letter, Exhibit 9 to Exhibit 13); Exhibit 22 (September 18, 2009 Letter, Exhibit 10 to Exhibit 13); Exhibit 23 (September 24, 2009 Letter, Exhibit 11 to Exhibit 13); Exhibit 24 (October 1, 2009 Letter, Exhibit 13 to Exhibit 13); Exhibit 25 (October 15, 2009 Letter, Exhibit 14 to Exhibit 13); Exhibit 26 (October 15, 2009 Letter, Exhibit 15 to Exhibit 13); Exhibit 13 at 13:6-24:5, 91:23-93:21, 104:11-106:11 (authenticating Exhibits 20-26); Exhibit 12 at ¶¶ 13-16 (authenticating Exhibits 21, 23, 24, 26); Exhibit 6 at 187:8-189:10.

[46] Exhibit 27 (Deposition Transcript of Wende Litterio in Razorback Litigation (Oct. 19, 2010)) at 97:6-100:16; Exhibit 11 at 204:11-206:3, 213:1-2; Exhibit 12 at ¶¶ 13-16; Exhibits 37-39 (Spinosa deposition exhibits 19-20, 22); Exhibit 13 (Spinosa Deposition concerning exhibits 19-21 thereto); Exhibit 41 at _; Exhibit 35 (Rothstein deposition exhibit 78).

[47] Exhibit 13 at 13:6-24:5, 91:23-93:21; Exhibit 27 at 97:6-100:16; Exhibit 11 at 204:11-206:3, 213:1-2; Exhibit 12 at ¶ 19.

[48] Exhibit 20; Exhibit 13 at 13:6-14:9.

only be distributed upon [Rothstein's or Rothstein's partner] instructions and shall only be distributed to [a bank account] "for further credit to the Ira Sochet Revocable Inter Vivos Trust." In this letter, Spinosa further emphasized that "the letter is understood not to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[49]

42.   Spinosa prepared a third letter dated September 18, 2009 for another account relating to investor Ira Sochet Revocable Inter Vivos Trust that stated "all funds contained in the above referenced account shall only be distributed upon [Rothstein's or Rothstein's partner] instructions and shall only be distributed to [a bank account] "for further credit to the Ira Sochet Revocable Inter Vivos Trust." In this letter, Spinosa further emphasized that "the letter is understood not to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[50]

43.   Spinosa prepared a letter dated September 24, 2009 for Banyon Income Fund LP that stated "all funds contained in the above referenced account shall only be distributed upon [Rothstein's or Rothstein's partner] instructions and shall only be distributed to Banyon Investment Fund LP" at Banyon's designated bank account. In this letter, Spinosa further emphasized that "the letter is understood not to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[51]

44.   Spinosa prepared a letter dated October 1, 2009 for investor Razorback Funding, LLC that stated "all funds contained in the above referenced account shall only be distributed upon [Rothstein's or Rothstein's partner] instructions and shall only be distributed to Banyon USVI (DEL), LLV c/o Razorback Funding, LLC" at the designated bank account for the Razorback investors. In this letter, Spinosa further emphasized that "the letter is understood not to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[52]

45.   On October 1, 2009, Spinosa's assistant informed Spinosa that she had confirmed to Chris Podaras, the signor on the Razorback Funding LLC account, that Spinosa signed the October 1

---

[49] Exhibit 21; Exhibit 13 at 14:13-15:1.

[50] Exhibit 22; Exhibit 13 at 15:5-19.

[51] Exhibit 23; Exhibit 13 at 16:12-17:11.

[52] Exhibit 24; Exhibit 13 at 19:1-20:12.

7

lock letter. Spinosa responded that same day, "That is fine. Thanks."[53]

46. Spinosa prepared a letter dated October 15, 2009 for investor D3 Capital Club, LLC that stated "all funds contained in the above referenced account shall only be distributed upon [Rothstein's or Rothstein's partner] instructions and shall only be distributed to D3 Capital Club, LLC" at D3 Capital Club, LLC's designated bank account. In this letter, Spinosa further emphasized that "the letter is understood not to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[54]

47. Spinosa prepared another letter dated October 15, 2009 for investor BFMC Investment, LLC that stated "all funds contained in the above referenced account shall only be distributed upon [Rothstein's or Rothstein's partner] instructions and shall only be distributed to [the designated bank account] belonging to BFMC Investment, LLC." In this letter, Spinosa further emphasized that "the letter is understood not to convey ownership of the account or access to the account to any other party, but rather is meant to irrevocably restrict conveyances" from the referenced RRA account to the investor's bank account specified in the letter.[55]

48. There were never any transfer restrictions on the Rothstein or RRA accounts.[56]

49. Spinosa knew the representations in the additional lock letters were false because, among other things, neither he nor anyone else at TD Bank had applied any procedures to restrict the accounts.[57]

50. In late August 2009, Spinosa was told by a TD Bank Assistant Vice President that any "lock" instructions put onto an account would have no practical effect because Rothstein could transfer funds from the account without restriction through TD Bank's internet customer banking systems.[58]

51. On approximately August 17, 2009, Spinosa participated in a conference call with Rothstein and Barrie Damson, who was investing in the Rothstein settlements through Coquina

---

[53] Exhibit 28 (TDBANK GEN 002578); Exhibit 29 (Deposition Transcript of Wende Litterio in Razorback Litigation (July 19, 2011)) at 229:10-232:25 (authenticating Exhibit 28).

[54] Exhibit 25; Exhibit 13 at 20:25-22:14.

[55] Exhibit 26; Exhibit 13 at 22:18-24:5.

[56] Exhibit 8 at 139:25-144:19, 205:15:-209:21, 215:2-216:10; Exhibit 10 at 183:15-194:24; Exhibit 13 at 19:17-23, 21:18-24, 23:16-22, 104:11-105:4, 105:16-25.

[57] Exhibits 20-26; Exhibit 13 at 13:6-24:5, 69:3-24, 104:11-106:11; Exhibit 12 at ¶¶ 18, 20-22; Exhibit 8 at 86:10-88:5.

[58] Exhibit 12 at ¶ 18; Exhibit 8 at 139:25-144:19, 205:15:-209:21, 215:2-216:10; Exhibit 10 at 183:15-194:24; Exhibit 13 at 107:2-108:1.

Investments so Damson could, among other things, verify Spinosa's August 17 Lock Letter concerning Coquina Investments.[59]

52. Spinosa knew that the purpose of the discussions with Damson was to have the investor invest more money with Rothstein.[60]

53. Spinosa and Rothstein prepared for the August 17 call by email that same morning, when Rothstein emailed Spinosa a list of questions he would ask him during the call about the effectiveness of the lock letters and instructed Spinosa that these are the answers you're to give, nothing else, and the call will be over." Spinosa responded "no problem," and followed Rothstein's instructions "to the letter."[61]

54. During the call, Spinosa confirmed to Damson that, as indicated in the August 17 Lock Letter, Spinosa had secured the account that could only be disbursed directly to Coquina Investments.[62]

55. However, Spinosa had never restricted this account and knew Rothstein could transfer funds from it without restriction.[63]

56. Spinosa also told Damson that the August 17 Lock Letter was not unusual at TD Bank, that many accounts at TD Bank had similar restrictions in place, and that TD Bank had systems in place to ensure compliance with the restrictions in the letter, including the transfer restrictions.[64]

57. Spinosa knew that TD Bank had never before utilized a lock letter making the representations in the letters Spinosa had executed and that TD Bank did not place such restrictions on accounts.[65]

58. During this conference call on August 17, 2009, Spinosa also told Damson that the account for the benefit of Coquina Investments held $22 million, which was the amount Rothstein had promised Damson and Coquina Investments.[66]

59. Spinosa knew that this representation was false because he knew that the account had a

---

[59] Exhibit 13 at 87:10-88:20; Exhibit 12 at ¶ 23; Exhibit 5 at 150:10-160:14.

[60] Exhibit 13 at 121:7-122:2; Exhibit 6 at 192:22-193:3.

[61] Exhibit 6 at 195:13-25; Exhibit 13 at 108:19-109:17; Exhibit 42 and 42(a).

[62] Exhibit 13 at 87:24-88:20, 110:1-9; Exhibit 5 at 157:3-158:7; Exhibit 6 at 195:6-22.

[63] Exhibit 8 at 86:10-88:5, 139:25-144:19, 205:15:-209:21, 215:2-216:10; Exhibit 10 at 183:15-194:24; Exhibit 13 at 104:11-106:11, 110:10-18.

[64] Exhibit 5 at 150:10-151:17; Exhibit 13 at 112:23-113:13, 115:3-25.

[65] Exhibit 8 at 86:10-88:5, 139:25-144:19, 205:15:-209:21, 215:2-216:10; Exhibit 10 at 183:15-194:24; Exhibit 13 at 104:3-106:11.

[66] Exhibit 12 at ¶ 23; Exhibit 5 at 150:10-151:17, 157:3-158:7; Exhibit 13 at 119:2-121:6.

balance of no more than $100 as of August 17, 2009.[67]

60. After the August 17, 2009 call, Coquina Investments made additional investments with Rothstein in August and September 2009.[68]

61. On September 10, 2009, Spinosa participated in a conference call with Rothstein and Menachem Lifshitz, an investor in the Rothstein settlements through Emess Capital, LLC, whose accounts Spinosa had purported to restrict in the September 9 Lock Letter.[69]

62. During the call, Spinosa, among other things, knowingly misrepresented to Lifshitz that the restrictions had been placed on that investor account, the lock letter was commonplace at TD Bank, and many other accounts had similar restrictions.[70]

63. On approximately September 20 or 25, 2009, Spinosa met with Damson and Kathleen White, both of whom had invested in the Rothstein settlements through Coquina Investments, and Rothstein at the TD Bank office where Spinosa worked.[71]

64. White told Spinosa she was there to confirm Spinosa's August 17 Lock Letter concerning Coquina Investments, that Spinosa had signed it, and that the statements in the lock letter were true.[72]

65. Spinosa responded to White that: (1) he was familiar with the transactions in the investor's account; (2) the money in the account was safe; (3) TD Bank had many accounts with similar restrictions; and (4) the investor had nothing to worry about since the provisions of the August 17 Lock Letter were in place restricting the movement of funds in the RRA account.[73]

66. During this meeting, Spinosa also misrepresented that there was more than $22 million in the investor's locked account.[74]

67. When Spinosa made these statements, he knew that the account had a balance of approximately $100, and Spinosa knew there were no restrictions on the account and that the August 17

---

[67] Exhibit 12 at ¶¶ 24-25; Exhibit 6 at 201:6-202:15; Exhibit 13 at 120:7-121:2.

[68] Exhibit 15 at 215:9-216:2; Exhibit 30 (Trial Transcript of Kathleen White in Coquina Litigation (Dec. 1, 2011)) at 221:18-222:22.

[69] Exhibit 13 at 89:7-13, 110:19-111:6; Exhibit 14 at 216:1-218:4.

[70] Exhibit 13 at 89:7-22, 110:19-112:22; Exhibit 14 at 216:1-218:4.

[71] Exhibit 12 at ¶ 26; Exhibit 13 at 89:24-90:4, 117:19-118:11, 122:18-24; Exhibit 15 at 216:3-217:22, 247:12-258:24; Exhibit 30 at 218:21-223:3.

[72] Exhibit 13 at 90:5-12; Exhibit 15 at 250:21-251-14.

[73] Exhibit 13 at 90:21-91:21, 118:1-11, 122:25-123:19; Exhibit 12 at ¶ 27; Exhibit 15 at 250:21-252:15, 265:3-23; Exhibit 30 at 220:6-222:19; Exhibit 6 at 192:8-21, 193:24-194:18.

[74] Exhibit 12 at ¶ 28; Exhibit 13 at 119:23-120:6; Exhibit 6 at 194:3-11; Exhibit 15 at 253:22-255:17.

Lock Letter did not restrict the account.[75]

68. Spinosa knew that the purpose of the discussions with White and Damson were to have the investor invest more money with Rothstein that was needed to perpetuate the Ponzi scheme.[76]

69. On or about September 10, 2009, Emess Capital made a $600 deposit into the RRA account being purportedly maintained for the benefit of Emess Capital. Emess Capital approached Rothstein because the deposit slip showed a balance of just $600,[77] but Rothstein had advised Emess the account held millions of dollars in settlement funds for Emess' benefit.[78]

70. Lifshitz, the addressee on the September 9 Lock Letter to Emess Capital, met with Spinosa and Rothstein in person on September 14, 2009.[79]

71. During that meeting, Spinosa knowingly misrepresented to Lifshitz that $20 million did not appear as available funds for Emess Capital because TD Bank was holding the funds in its Treasury Direct Wire queue for this account.[80]

72. TD Bank was not holding funds in its Treasury Direct Wire queue for this account.[81] This was a story Rothstein admits he concocted to conceal the fact that the promised funds were not in the account, and Rothstein enlisted Spinosa to convince Emess of the false story.[82]

73. During this same meeting, Spinosa also falsely represented to Lifshitz that the September 9 Lock Letter irrevocably restricted the movement of the money in the RRA trust account so it could only be transferred to the investor's account.[83]

74. Spinosa provided Rothstein with documents containing false account balances to make it appear that the accounts had larger balances than they in fact had.[84]

75. Spinosa also consented for Rothstein to use TD Bank offices to show false bank statements to investors which Spinosa knew were false, and hold investor meetings to lend credibility to

---

[75] Exhibit 12 at ¶¶ 29-30; Exhibit 13 at 120:7-125:4; Exhibit 6 at 194:3-18.

[76] Exhibit 13 at 125:5-13; Exhibit 6 at 192:22-193:16.

[77] Exhibit 31 (Deposition Transcript of Sandy Liebhard in Emess Capital Litigation (Apr. 3, 2012) at 284:18-285:20; Exhibit 14 at 193:14-22.

[78] Exhibit 31 at 284:18-285:20; Exhibit 14 at 193:14-22; Exhibit 32 (Deposition Transcript of Scott Rothstein in RRA Bankruptcy (June 19, 2012)) at 23:23-27:13, 43:5-44:8

[79] Exhibit 14 at 190:24-191:4; Exhibit 13 at 127:3-9.

[80] Exhibit 14 at 192:24-193:3, 198:8-20; Exhibit 13 at 127:10-129:19; Exhibit 32 at 23:23-27:13, 43:5-44:8.

[81] Exhibit 13 at 127:10-129:19; Exhibit 32 at 23:23-27:13, 43:5-44:8.

[82] Exhibit 13 at 127:10-129:19; Exhibit 32 at 23:23-27:13, 43:5-44:8.

[83] Exhibit 14 at 198:8-17; Exhibit 13 at 129:20-130:4.

[84] Exhibit 13 at 149:24-150:19.

Rothstein's scheme.[85]

76. Spinosa told investors that there were millions of dollars in the trust accounts when in fact there was only $100 in the account.[86]

77. Rothstein asked Spinosa to wire $16 million for him from RRA's accounts at TD Bank to Morocco, where Rothstein fled after his Ponzi scheme was discovered. Spinosa complied with Rothstein's request.[87]

78. Intentionally omitted.

79. Spinosa asserted the Fifth Amendment to every Request for Admissions, numbered:[88]

1. Beginning in approximately October 2008, you managed Scott Rothstein and Rothstein, Rosenfeldt, Adler P.A.'s accounts at TD Bank (collectively, the "RothsteinAccounts").

2. During the time you managed the Rothstein Accounts, you knew the account balances in those accounts.

3. You received bonuses and compensation from TD Bank based in part on the size of the Rothstein Accounts.

4. Prior to working with the Rothstein Accounts, you received training on how to identify suspicious account activity.

5. During the period of approximately 2006 until approximately November 1, 2009, you held the position of Regional Vice President for Commerce Bank and then TD Bank.

6. From at least October 2008 until approximately October 2009, TD Bank participated in presentations to potential investors of Rothstein with your knowledge.

7. During the time you managed the Rothstein Accounts, you knew Rothstein's structured settlement investment was a fraudulent scheme.

8. Rothstein asked you to sign letters to investors on TD Bank letterhead that purported to restrict accounts designated for investors ("Lock Letters").

9. You knew Rothstein planned to forward to investors the Lock Letters you signed.

10. Attached as Exhibit A is a true and correct copy of a Lock Letters you signed dated August 17, 2009.

11. Attached as Exhibit B is a true and correct copy of a Lock Letters you signed dated August 25, 2009.

12. Attached as Exhibit C is a true and correct copy of a Lock Letters you signed dated September 16, 2009.

13. Attached as Exhibit D is a true and correct copy of a Lock Letters you signed dated September 18, 2009.

14. Attached as Exhibit E is a true and correct copy of a Lock Letters you signed dated September 24, 2009.

---

[85] Exhibit 12 at ¶¶ 31-32.

[86] Exhibit 15 at 253:10-254:22.

[87] Exhibit 6 at 232:10-20, 239:13-240:21.

[88] *Id.* at Exhibit A thereto.

15. Attached as Exhibit F is a true and correct copy of a Lock Letters you signed dated October 1, 2009.

16. Attached as Exhibit G is a true and correct copy of a Lock Letters you signed dated October 15, 2009.

17. Attached as Exhibit H is a true and correct copy of a Lock Letters you signed dated September 9 ,2009.

18. In approximately late August 2009, A TD Bank Assistant Vice President and Branch Manager who worked at TD Bank's Weston, Florida branch and reported to you told you that any "lock" instructions put onto an account would have no practical effect because Rothstein could still transfer the money without bank officials being alerted.

19. You believed investors in Rothstein's investment would rely on the statements in the Lock Letters.

20. You knew the Lock Letters were false.

21. You knew it was not possible to restrict the accounts in the way described in the Lock Letters.

22. You knew Rothstein had online access to the accounts and could transfer funds without restriction.

23. On approximately August 17, 2009, you participated in a conference call with Scott Rothstein and Coquina Investment investor Barrie Damson, and you confirmed there was $22 million in Coquina Investment's account.

24. When you made the representation about the Coquina Investment account balance to Damson on August 17, 2009, you knew it was false.

25. When you made the representation about the Coquina Investment account balance to Damson on August 17, 2009, you knew that account had a balance of no more than $100.

26. On September 25, 2009, you met with Rothstein, Barrie Damson, and Kathleen White at TD Bank's corporate office in Fort Lauderdale, Florida.

27. During the September 25, 2009 meeting, you explained to White and Damson that the Lock Letter was not unusual at TD Bank and TD Bank had systems in place to make sure the Lock Letter was complied with.

28. During the September 25, 2009 meeting, you confirmed to White and Damson there was more than $22 million in Coquina Investment's locked account.

29. When you made the representation about the Coquina Investment account balance to White and Damson during the September 25, 2009 meeting, you knew it was false.

30. When you made the representation about the Coquina Investment account balance to White and Damson on September 25, 2009, you knew that account had a balance of about $100.

31. You agreed to help Rothstein by using TD Bank employees and facilities to participate in investor meetings to lend credibility to Rothstein's scheme.

32. You consented for Rothstein to use TD Bank offices to show false bank statements to investors with knowledge the bank statements were false.

33. During the time you managed the Rothstein accounts, you knew investors had no way to verify account balances other than through TD Bank or Rothstein.

13