Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  13-cv-62066-KAM

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

vs.

FRANK A. SPINOSA,

       Defendant.

_____/

PAGES 1-168

DEPOSITION OF FRANK A. SPINOSA

Tuesday, September 16, 2014
10:20 a.m. - 4:22 p.m.

United States
Securities and Exchange Commission
Miami Regional Office

801 Brickell Avenue
Suite 1800
Miami, Florida  33131

Stenographically Reported By:
Dianne Sarkisian, CSR, RPR

BRICKELL KEY COURT REPORTING, LLC
305.407.9993

EXHIBIT
13

FRANK SPINOSA
9/16/2014

Page 8

1        A.    Based upon the advice of my lawyer, I
2    respectfully decline to answer the question pursuant to
3    my Fifth Amendment rights as guaranteed to me by the
4    United States Constitution.
5        Q.    And what concern do you have -- what's giving
6    rise to you asserting your Fifth Amendment in response to
7    our question about whether you've seen your discovery
8    responses?
9              MR. RABIN:   Objection to the question.  It's
10   an improper question to ask somebody why they're
11   asserting the Fifth.
12             I'll instruct you not to answer the question.
13       A.    Based upon the advice of my --
14             MR. RABIN:   That's it.  You don't have to say
15   that.
16             THE WITNESS:   Sorry.
17             MR. RABIN:   You don't have to answer that
18   question.
19   BY MS. BERLIN:
20       Q.    Go ahead and set Exhibit 3 aside.
21             (PLAINTIFF'S EXHIBIT 4,
22             LETTER DATED AUGUST 17, 2009)
23   BY MS. BERLIN:
24       Q.    I'm handing you Exhibit 4.
25             MR. RABIN:   Do you have Exhibit 4 for me?

FRANK SPINOSA
9/16/2014

Page 9

1              MS. BERLIN:  Yes.

2              MR. RABIN:  Thank you.

3    BY MS. BERLIN:

4         Q.   Mr. Spinosa, is Exhibit 4, Bates number TD

5    Bank SEC 047531, is this your signature on the bottom

6    left-hand corner of Exhibit 4?

7         A.   Based upon the advice of my lawyer, I

8    respectfully decline to answer the question pursuant to

9    my Fifth Amendment rights as guaranteed to me by the

10   United States Constitution.

11        Q.   Go ahead, set that document aside.

12             (PLAINTIFF'S EXHIBIT 5,

13             LETTER DATED AUGUST 23, 2009)

14   BY MS. BERLIN:

15        Q.   I'm marking Exhibit 5.

16             MR. RABIN:  Thank you.

17   BY MS. BERLIN:

18        Q.   Exhibit 5 is Bates number TD/Razor 001328.

19             Mr. Spinosa, is this your signature on the

20   bottom left-hand corner of Exhibit 5?

21        A.   Based upon the advice of my lawyer, I

22   respectfully decline to answer the question pursuant to

23   my Fifth Amendment rights as guaranteed to me by the

24   United States Constitution.

25             (PLAINTIFF'S EXHIBIT 6,

FRANK SPINOSA
9/16/2014

Page 10

1                  LETTER DATED SEPTEMBER 9, 2009)

2      BY MS. BERLIN:

3           Q.   Mr. Spinosa, Exhibit 6 at the top has a

4      heading that says:  Case 0:10-civil-60882 and the docket

5      number is docket 1-3.

6                  Is this your signature on the bottom left-hand

7      corner of Exhibit 6?

8           A.   Based upon the advice of my lawyer, I

9      respectfully decline to answer the question pursuant to

10     my Fifth Amendment rights as guaranteed to me by the

11     United States Constitution.

12          Q.   Okay.  You executed several of these types of

13     letters that we see in Exhibit 6 at the request of Scott

14     Rothstein, correct?

15          A.   Based upon the advice of my lawyer, I

16     respectfully decline to answer the question pursuant to

17     my Fifth Amendment rights as guaranteed to me by the

18     United States Constitution.

19          Q.   And this letter states that -- in the second

20     full paragraph -- upon receipt of this letter, all funds

21     contained in the above account shall only be distributed

22     upon my instructions and shall only be distributed to,

23     and it has the name of an investor, correct?

24          A.   Based upon the advice of my lawyer, I

25     respectfully decline to answer the question pursuant to

FRANK SPINOSA
9/16/2014

Page 11

1    my Fifth Amendment rights as guaranteed to me by the

2    United States Constitution.

3        Q.   When you signed Exhibit 6, you knew this

4    statement was false, correct?

5        A.   Based upon the advice of my lawyer, I

6    respectfully decline to answer the question pursuant to

7    my Fifth Amendment rights as guaranteed to me by the

8    United States Constitution.

9        Q.   And the next paragraph in Exhibit 6 states:

10   This letter is not meant to convey ownership of the

11   account or access to the account to any other party, but

12   rather is meant to irrevocably restrict conveyances from

13   this account to, and it has the name of an investor.

14           Do you see that?

15       A.   Based upon the advice of my lawyer, I

16   respectfully decline to answer the question pursuant to

17   my Fifth Amendment rights.

18       Q.   What is the basis for asserting your Fifth

19   Amendment rights to whether you see those words on

20   Exhibit 6?

21           MR. RABIN:  You don't have to answer the

22   question as to why you're asserting your rights.

23       A.   Based upon --

24           MR. RABIN:  You don't have to answer the

25   question.  You don't have to even assert the Fifth.

FRANK SPINOSA
9/16/2014

Page 12

1          THE WITNESS:   Sorry.

2     BY MS. BERLIN:

3          Q.   When you signed this letter, you knew the

4     statements in the third paragraph of Exhibit 6 were

5     false, correct?

6          A.   Based upon the advice of my lawyer, I

7     respectfully decline to answer the question pursuant to

8     my Fifth Amendment rights as guaranteed to me by the

9     United States Constitution.

10               (PLAINTIFF'S EXHIBIT 7,

11               LETTER DATED SEPTEMBER 16, 2009)

12     BY MS. BERLIN:

13          Q.   I'm marking as Exhibit 7, a document Bates

14     stamped TD/Razor 000132.

15               Mr. Spinosa, this is your signature on the

16     bottom left-hand corner of Exhibit 7, correct?

17          A.   Based upon the advice of my lawyer, I

18     respectfully decline to answer the question pursuant to

19     my Fifth Amendment rights as guaranteed to me by the

20     United States Constitution.

21          Q.   When you signed this letter, you knew the

22     statements in it were false, correct?

23          A.   Based upon the advice of my lawyer, I

24     respectfully decline to answer the question pursuant to

25     my Fifth Amendment rights as guaranteed to me by the

FRANK SPINOSA
9/16/2014

Page 13

1    United States Constitution.

2         Q.    You can set the document aside.

3               (PLAINTIFF'S EXHIBIT 8,

4               LETTER DATED SEPTEMBER 18, 2009)

5    BY MS. BERLIN:

6         Q.    I'm marking as Exhibit 8, a document Bates

7    stamped TD/Razor 001334.

8               Mr. Spinosa, this is your signature on Exhibit

9    8, correct?

10        A.    Based upon the advice of my lawyer, I

11   respectfully decline to answer the question pursuant to

12   my Fifth Amendment rights as guaranteed to me by the

13   United States Constitution.

14        Q.    When you signed Exhibit 8, you knew the

15   statements in this letter were false, correct?

16        A.    Based upon the advice of my lawyer, I

17   respectfully decline to answer the question pursuant to

18   my Fifth Amendment rights as guaranteed to me by the

19   United States Constitution.

20        Q.    In fact, there were no procedures at TD Bank

21   when you signed Exhibit 8 for locking accounts or

22   restricting distributions; isn't that right?

23        A.    Based upon the advice of my lawyer, I

24   respectfully decline to answer the question pursuant to

25   my Fifth Amendment rights as guaranteed to me by the

FRANK SPINOSA
9/16/2014

Page 14

1    United States Constitution.

2         Q.   When you signed Exhibit 8, you knew that TD

3    Bank had no procedures in place to restrict this account

4    listed in Exhibit 8 or any other account; isn't that

5    correct?

6         A.   Based upon the advice of my lawyer, I

7    respectfully decline to answer the question pursuant to

8    my Fifth Amendment rights as guaranteed to me by the

9    United States Constitution.

10             (PLAINTIFF'S EXHIBIT 9,

11             LETTER DATED SEPTEMBER 18, 2009)

12   BY MS. BERLIN:

13        Q.   I'm marking as Exhibit 9, a letter with Mr.

14   Spinosa's signature dated September 18, 2009.

15             MR. RABIN:   What purports to be his signature,

16   you mean?

17             MS. BERLIN:   I'd ask you not to make improper

18   objections.

19             MR. RABIN:   That was my objection.

20   BY MS. BERLIN:

21        Q.   Mr. Spinosa, this is your signature on Exhibit

22   9, correct?

23        A.   Based upon the advice of my lawyer, I

24   respectfully decline to answer the question pursuant to

25   my Fifth Amendment rights as guaranteed to me by the

FRANK SPINOSA
9/16/2014

Page 15

1    United States Constitution.

2                (PLAINTIFF'S EXHIBIT 10,

3                LETTER DATED SEPTEMBER 18, 2009)

4    BY MS. BERLIN:

5        Q.   We're marking as Exhibit 10, a document Bates

6    stamped TD/Razor 001336.

7                Mr. Spinosa, this is your signature on Exhibit

8    10, correct?

9        A.   Based upon the advice of my lawyer, I

10   respectfully decline to answer the question pursuant to

11   my Fifth Amendment rights as guaranteed to me by the

12   United States Constitution.

13       Q.   When you signed Exhibit 10, you had no

14   reasonable basis for making the statements in the letter

15   marked as Exhibit 10, correct?

16       A.   Based upon the advice of my lawyer, I

17   respectfully decline to answer the question pursuant to

18   my Fifth Amendment rights as guaranteed to me by the

19   United States Constitution.

20       Q.   In fact, as to Exhibits 4 through 10, when you

21   signed each of these letters you had no reasonable basis

22   for making the statements in those letters, correct?

23       A.   Based upon the advice of my lawyer, I

24   respectfully decline to answer the question pursuant to

25   my Fifth Amendment rights as guaranteed to me by the

FRANK SPINOSA
9/16/2014

Page 16

1    United States Constitution.

2         Q.   In fact, when you signed the letters marked as

3    Exhibits 4 through 10, you knew the statements in these

4    letters were false, correct?

5         A.   Based upon the advice of my lawyer, I

6    respectfully decline to answer the question pursuant to

7    my Fifth Amendment rights as guaranteed to me by the

8    United States Constitution.

9                   (PLAINTIFF'S EXHIBIT 11,

10                  LETTER DATED SEPTEMBER 24, 2009)

11   BY MS. BERLIN:

12        Q.   I'm marking as Exhibit 11, a letter dated

13   September 24, 2009, with a signature block for Frank

14   Spinosa and his signature.

15             Mr. Spinosa, this is your signature on Exhibit

16   11, correct?

17             MR. RABIN:   He doesn't have it in front of

18   him.  Hold on a second.

19        A.   Based upon the advice of my lawyer, I

20   respectfully decline to answer the question pursuant to

21   my Fifth Amendment rights as guaranteed to me by the

22   United States Constitution.

23   BY MS. BERLIN:

24        Q.   And when you executed Exhibit 11, you knew

25   there was no reasonable basis for making representations

FRANK SPINOSA
9/16/2014

Page 17

1    in Exhibit 11, correct?

2         A.   Based upon the advice of my lawyer, I

3    respectfully decline to answer the question pursuant to

4    my Fifth Amendment rights as guaranteed to me by the

5    United States Constitution.

6         Q.   When you executed Exhibit 11, you knew the

7    statements in Exhibit 11 were false, right?

8         A.   Based upon the advice of my lawyer, I

9    respectfully decline to answer the question pursuant to

10   my Fifth Amendment rights as guaranteed to me by the

11   United States Constitution.

12                 (PLAINTIFF'S EXHIBIT 12,

13                 LETTER DATED SEPTEMBER 30, 2009)

14   BY MS. BERLIN:

15        Q.   I'm marking as Exhibit 12, a letter with Mr.

16   Rothstein's signature block to Mr. Spinosa, dated

17   September 30th, 2009.

18                 Mr. Spinosa, this is a letter you received

19   from Scott Rothstein, correct?

20        A.   Based upon the advice of my lawyer, I

21   respectfully decline to answer the question pursuant to

22   my Fifth Amendment rights as guaranteed to me by the

23   United States Constitution.

24        Q.   And when you received Exhibit 12, you knew

25   that the statements in Mr. Rothstein's letter concerning

FRANK SPINOSA
9/16/2014

Page 18

1    restricting distributions in the account were false,

2    correct?

3         A.    Based upon the advice of my lawyer, I

4    respectfully decline to answer the question pursuant to

5    my Fifth Amendment rights as guaranteed to me by the

6    United States Constitution.

7         Q.    And you knew when you received Exhibit 12 that

8    Mr. Rothstein was going to use this letter for purposes

9    of trying to solicit investors in his settlement

10   business, correct?

11        A.    Based upon the advice of my lawyer, I

12   respectfully decline to answer the question pursuant to

13   my Fifth Amendment rights as guaranteed to me by the

14   United States Constitution.

15        Q.    In fact, when you signed Exhibits 4 through

16   11, you knew these letters in Exhibits 4 through 11 were

17   going to be used by Mr. Rothstein to solicit investors in

18   his settlement business, correct?

19        A.    Based upon the advice of my lawyer, I

20   respectfully decline to answer the question pursuant to

21   my Fifth Amendment rights as guaranteed to me by the

22   United States Constitution.

23              (PLAINTIFF'S EXHIBIT 13,

24              LETTER DATED OCTOBER 1, 2009)

25   BY MS. BERLIN:

FRANK SPINOSA
9/16/2014

Page 19

1      Q.   I'm marking as Exhibit 13, a letter with Mr.

2  Spinosa's signature block, dated October 1st, 2009.

3           Mr. Spinosa, this is your signature on Exhibit

4  13, correct?

5      A.   Based upon the advice of my lawyer, I

6  respectfully decline to answer the question pursuant to

7  my Fifth Amendment rights as guaranteed to me by the

8  United States Constitution.

9      Q.   And when you signed Exhibit 13 on October 1st,

10  2009, you had no reasonable basis for making the

11  statements in your letter concerning restrictions on the

12  account, correct?

13     A.   Based upon the advice of my lawyer, I

14  respectfully decline to answer the question pursuant to

15  my Fifth Amendment rights as guaranteed to me by the

16  United States Constitution.

17     Q.   In fact, when you executed the letter shown as

18  Exhibit 13, you knew that there were no restrictions in

19  place on these accounts at TD Bank, correct?

20     A.   Based upon the advice of my lawyer, I

21  respectfully decline to answer the question pursuant to

22  my Fifth Amendment rights as guaranteed to me by the

23  United States Constitution.

24     Q.   When you executed Exhibit 13, you knew Mr.

25  Rothstein was going to use your letter to solicit

FRANK SPINOSA
9/16/2014

Page 20

1      investors to give them a false sense of security in his

2      investment, correct?

3                  MR. RABIN:   Objection, compound question.

4                  MS. BERLIN:   I'll rephrase.

5      BY MS. BERLIN:

6           Q.   When you executed Exhibit 13, you knew Mr.

7      Rothstein was going to use your letter to solicit

8      investors, correct?

9           A.   Based upon the advice of my lawyer, I

10      respectfully decline to answer the question pursuant to

11      my Fifth Amendment rights as guaranteed to me by the

12      United States Constitution.

13          Q.   When you executed the letters that we've

14      looked at today as Exhibits 4 through 11 and 13, you knew

15      that Mr. Rothstein was going to use these letters to

16      solicit investors based upon the false statements in

17      them, correct?

18          A.   Based upon the advice of my lawyer, I

19      respectfully decline to answer the question pursuant to

20      my Fifth Amendment rights as guaranteed to me by the

21      United States Constitution.

22                  (PLAINTIFF'S EXHIBIT 14,

23                  LETTER DATED OCTOBER 15, 2009)

24      BY MS. BERLIN:

25          Q.   I'm marking as Exhibit 14, a letter Bates

FRANK SPINOSA
9/16/2014

Page 21

1    stamped TD/Razor 001340.

2              MR. RABIN:   Thank you.

3    BY MS. BERLIN:

4         Q.   Mr. Spinosa, this is your signature on Exhibit

5    14, correct?

6         A.   Based upon the advice of my lawyer, I

7    respectfully decline to answer the question pursuant to

8    my Fifth Amendment rights as guaranteed to me by the

9    United States Constitution.

10        Q.   When you executed Exhibit 14 on October 15th,

11   2009, you had no reasonable basis for making the

12   statements in Exhibit 14 concerning restrictions on the

13   accounts, correct?

14        A.   Based upon the advice of my lawyer, I

15   respectfully decline to answer the question pursuant to

16   my Fifth Amendment rights as guaranteed to me by the

17   United States Constitution.

18        Q.   In fact, when you executed Exhibit 14 on

19   October 15th, 2009, you knew there were no restrictions

20   in place on the accounts at TD Bank, correct?

21        A.   Based upon the advice of my lawyer, I

22   respectfully decline to answer the question pursuant to

23   my Fifth Amendment rights as guaranteed to me by the

24   United States Constitution.

25        Q.   When you executed Exhibit 14, you knew that

FRANK SPINOSA
9/16/2014

Page 22

1    Scott Rothstein was going to use your letter to solicit

2    investors, correct?

3         A.   Based upon the advice of my lawyer, I

4    respectfully decline to answer the question pursuant to

5    my Fifth Amendment rights as guaranteed to me by the

6    United States Constitution.

7         Q.   When you executed Exhibit 14, you knew Mr.

8    Rothstein would use your letter to give investors and

9    potential investors a false sense of security in their

10   investments with him, correct?

11        A.   Based upon the advice of my lawyer, I

12   respectfully decline to answer the question pursuant to

13   my Fifth Amendment rights as guaranteed to me by the

14   United States Constitution.

15             (PLAINTIFF'S EXHIBIT 15,

16             LETTER DATED OCTOBER 15, 2009)

17   BY MS. BERLIN:

18        Q.   I'm marking as Exhibit 15, a document Bates

19   stamped TD/Razor 000934.

20             MR. RABIN:   Thank you.

21   BY MS. BERLIN:

22        Q.   Mr. Spinosa, this is your signature on the

23   letter marked Exhibit 15, correct?

24        A.   Based upon the advice of my lawyer, I

25   respectfully decline to answer the question pursuant to

FRANK SPINOSA
9/16/2014

Page 23

1    my Fifth Amendment rights as guaranteed to me by the

2    United States Constitution.

3         Q.    And you executed this letter marked as Exhibit

4    15 on October 15, 2009, correct?

5         A.    Based upon the advice of my lawyer, I

6    respectfully decline to answer the question pursuant to

7    my Fifth Amendment rights as guaranteed to me by the

8    United States Constitution.

9         Q.    When you executed Exhibit 15, you had no

10   reasonable basis for making your statements in Exhibit 15

11   concerning restrictions on the accounts, correct?

12        A.    Based upon the advice of my lawyer, I

13   respectfully decline to answer the question pursuant to

14   my Fifth Amendment rights as guaranteed to me by the

15   United States Constitution.

16        Q.    When you executed Exhibit 15, you knew there

17   were no distribution restrictions on the accounts at TD

18   Bank, correct?

19        A.    Based upon the advice of my lawyer, I

20   respectfully decline to answer the question pursuant to

21   my Fifth Amendment rights as guaranteed to me by the

22   United States Constitution.

23        Q.    When you executed Exhibit 15, you knew that

24   Scott Rothstein was going to use Exhibit 15 to solicit

25   potential investors and give current investors a false

FRANK SPINOSA
9/16/2014

Page 24

1    sense of security, correct?

2         A.   Based upon the advice of my lawyer, I

3    respectfully decline to answer the question pursuant to

4    my Fifth Amendment rights as guaranteed to me by the

5    United States Constitution.

6              (PLAINTIFF'S EXHIBIT 16, AMENDED COMPLAINT)

7    BY MS. BERLIN:

8         Q.   Okay.  I'm marking as Exhibit 16, the Amended

9    Complaint.

10             Mr. Spinosa, have you seen Exhibit 16, the

11   Amended Complaint filed against you in this case?

12        A.   Based upon --

13             MS. BERLIN:  I'm sorry, there's a question

14   pending.  I'm objecting to counsel whispering to his

15   client.

16             MR. RABIN:  I'm not whispering to him.  I can

17   talk to him any time I want.

18             MS. BERLIN:  There's a question pending.

19             MR. RABIN:  Okay, that's fine.

20             MS. BERLIN:  We object to you --

21             MR. RABIN:  Your objection's noted.

22             Let's go outside so we can talk.

23             MS. BERLIN:  I object to you walking out of

24   the deposition.  There's a question pending.

25             MR. RABIN:  Objection's noted.

FRANK SPINOSA
9/16/2014

Page 62

1        Q.    Looking at paragraph 23 of the Amended

2   Complaint against you, in Exhibit 16 do you see where it

3   reads:  A key premise of Rothstein's Ponzi scheme was

4   that investors were purchasing legal settlements that the

5   settling defendants had paid in full, and the settlement

6   proceeds were on deposit in one of several of Rothstein's

7   attorney trust accounts at TD Bank.  Rothstein promised

8   to make distributions from these accounts to his

9   investors in accordance with their structured settlement

10  purchases.  Rothstein's investors had no direct access to

11  RRA's trust accounts to verify his claims.

12         At the peak of Rothstein's Ponzi scheme in

13  August 2009, several of Rothstein's investors sought

14  confirmation concerning the security of the investment

15  and that the settlement funds they purchased in the TD

16  Bank accounts could be paid only to them.

17         Did I read that correctly?

18       A.    I do see that.

19       Q.    And then looking at your Answer in Exhibit 17,

20  do you see that your response to this paragraph was:

21  Spinosa is without knowledge as to the allegations of

22  paragraph 23 and therefore denied?

23       A.    I do see that, and the document is accurate.

24       Q.    So... But, Mr. Spinosa, as the regional vice

25  president at TD Bank, you had knowledge of whether or not

FRANK SPINOSA
9/16/2014

Page 63

1    investors had access to the trust accounts you were

2    managing, correct?

3         A.   Based upon the advice of my lawyer, I

4    respectfully decline to answer the question pursuant to

5    my Fifth Amendment rights as guaranteed to me by the

6    United States Constitution.

7         Q.   And you knew who had access to view account

8    balances for the accounts that you were managing at TD

9    Bank; is that right?

10        A.   Based upon the advice of my lawyer, I

11   respectfully decline to answer the question pursuant to

12   my Fifth Amendment rights as guaranteed to me by the

13   United States Constitution.

14        Q.   All right.  Let's look at paragraph 24 of the

15   Amended Complaint, please.  It's Exhibit 16.  Do you see

16   it reads:  In response to these investor inquiries, from

17   no later than August 17, 2009 until at least October

18   15th, 2009, Spinosa sent at least eleven so-called lock

19   letters through Rothstein to investors, making false

20   representations about the accounts.

21             Do you see where it reads that on Exhibit 16,

22   the Amended Complaint against you?

23        A.   I do see that.

24        Q.   Turning to Exhibit 17, do you see your Answer

25   to paragraph 24 where your response is:  Spinosa states

FRANK SPINOSA
9/16/2014

Page 69

1     my Fifth Amendment rights as guaranteed to me by the

2     United States Constitution.

3          Q.   And you executed at least 11 of these lock

4     letters from no later than August 17th, 2009 until at

5     least October 15th, 2009, correct?

6          A.   Based upon the advice of my lawyer, I

7     respectfully decline to answer the question pursuant to

8     my Fifth Amendment rights as guaranteed to me by the

9     United States Constitution.

10         Q.   And these lock letters that you executed and

11    signed, these include Exhibits 4 through 11 and 13

12    through 15 that you viewed earlier today, correct?

13         A.   Based upon the advice of my lawyer, I

14    respectfully decline to answer the question pursuant to

15    my Fifth Amendment rights as guaranteed to me by the

16    United States Constitution.

17         Q.   When you executed these lock letters,

18    including Exhibits 4 through 11 and 13 through 15, you

19    knew the letters made false representations to investors

20    about the accounts, correct?

21         A.   Based upon the advice of my lawyer, I

22    respectfully decline to answer the question pursuant to

23    my Fifth Amendment rights as guaranteed to me by the

24    United States Constitution.

25         Q.   Looking at paragraph 25 of the Amended

Page 75

1    United States Constitution.

2         Q.   After you executed Exhibits 4 through 11, you

3    sent them to Rothstein, correct?

4              MR. RABIN:  Objection, form.

5         A.   Based upon the advice of my lawyer, I

6    respectfully decline to answer the question pursuant to

7    my Fifth Amendment rights as guaranteed to me by the

8    United States Constitution.

9    BY MS. BERLIN:

10        Q.   And when you sent the letters marked as

11   Exhibit 4 through 7, you knew that Rothstein was going to

12   distribute them to investors, correct?

13        A.   Based upon the advice of my lawyer, I

14   respectfully decline to answer the question pursuant to

15   my Fifth Amendment rights as guaranteed to me by the

16   United States Constitution.

17        Q.   You knew that Rothstein was going to send the

18   letters marked as Exhibits 4 through 7 to the investors

19   whose accounts were referenced in those letters marked as

20   Exhibits 4 through 7, correct?

21        A.   Based upon the advice of my lawyer, I

22   respectfully decline to answer the question pursuant to

23   my Fifth Amendment rights as guaranteed to me by the

24   United States Constitution.

25        Q.   And when you executed the letters marked as

FRANK SPINOSA
9/16/2014

Page 76

1    Exhibits 4 through 7, you knew the statements about the

2    investors' accounts in those letters were false?

3              MR. RABIN:  Objection, form.

4         A.   Based upon the advice of my lawyer, I

5    respectfully decline to answer the question pursuant to

6    my Fifth Amendment rights as guaranteed to me by the

7    United States Constitution.

8    BY MS. BERLIN:

9         Q.   In paragraph 27 of the Amended Complaint, do

10   you see where it states:  In each of these four letters,

11   Rothstein and Spinosa stated that TD Bank irrevocably

12   restricted certain trust accounts designated for the

13   investors, and all funds contained in the above account

14   shall only be distributed upon Rothstein's instructions

15   and shall only be distributed to the investor, at the

16   investor's designated bank account.

17             Do you see that?

18        A.   I do see that.

19        Q.   And that is, in fact, what the letter stated,

20   correct?

21        A.   Based upon the advice of my lawyer, I

22   respectfully decline to answer the question pursuant to

23   my Fifth Amendment rights as guaranteed to me by the

24   United States Constitution.

25        Q.   Looking at Exhibit 17, which is your Answer to

FRANK SPINOSA
9/16/2014

Page 86

1             (Lunch recess taken at 12:01 p.m.)

2             (Back on the record at 2:18 p.m.)

3    BY MS. BERLIN:

4         Q.   Mr. Spinosa, beginning on at least August

5    17th, 2009, you knew the lock letters appearing as

6    Exhibits 4 through 7 were for delivery to the investors

7    whose accounts you purported to restrict in those

8    letters, correct?

9             MS. LOPEZ:   I'm going to object to form.

10        A.   Based upon the advice of my lawyer, I

11   respectfully decline to answer the question pursuant to

12   my Fifth Amendment rights as guaranteed to me by the

13   United States Constitution.

14   BY MS. BERLIN:

15        Q.   Beginning on at least August 17th, 2009, you

16   knew that the letters marked as Exhibits 4 through 7

17   would be distributed to investors by Scott Rothstein,

18   correct?

19             MS. LOPEZ:   Object as to form.

20        A.   Based upon the advice of my lawyer, I

21   respectfully decline to answer the question pursuant to

22   my Fifth Amendment rights as guaranteed to me by the

23   United States Constitution.

24   BY MS. BERLIN:

25        Q.   By at least August 17th, 2009, you knew that

FRANK SPINOSA
9/16/2014

Page 87

1    Scott Rothstein was distributing the lock letters marked

2    as Exhibits 4 through 7 to the investors whose accounts

3    you were purporting to lock in those letters, correct?

4         MS. LOPEZ:  Objection as to form.

5         A.    Based upon the advice of my lawyer, I

6    respectfully decline to answer the question pursuant to

7    my Fifth Amendment rights as guaranteed to me by the

8    United States Constitution.

9    BY MS. BERLIN:

10        Q.    On August 17th, 2009, you participated in a

11   conference call with Scott Rothstein and Barrie Damson,

12   correct?

13        A.    Based upon the advice of my lawyer, I

14   respectfully decline to answer the question pursuant to

15   my Fifth Amendment rights as guaranteed to me by the

16   United States Constitution.

17        Q.    The purpose of your meeting on August 17th,

18   2009 was so that Barrie Damson could verify your August

19   17th lock letter concerning Coquina Investments, correct?

20        A.    Based upon the advice of my lawyer, I

21   respectfully decline to answer the question pursuant to

22   my Fifth Amendment rights as guaranteed to me by the

23   United States Constitution.

24        Q.    And on August 17th, 2009, you participated in

25   a phone call with Scott Rothstein and Barrie Damson,

FRANK SPINOSA
9/16/2014

Page 88

1    where you confirmed to Mr. Damson that you had, in fact,

2    cosigned the August 17th lock letter, correct?

3                MS. LOPEZ:  Objection as to form.

4        A.   Based upon the advice of my lawyer, I

5    respectfully decline to answer the question pursuant to

6    my Fifth Amendment rights as guaranteed to me by the

7    United States Constitution.

8    BY MS. BERLIN:

9        Q.   Would you please turn to Exhibit 4.

10               On August 17th, 2009, you participated in a

11   phone call with Scott Rothstein and Barrie Damson, where

12   Mr. Rothstein told you Mr. Damson was one of his

13   investors, and you confirmed to Mr. Damson that the

14   letter appearing as Exhibit 4 was, in fact, signed by

15   you; isn't that right?

16               MS. LOPEZ:  Objection as to form.

17       A.   Based upon the advice of my lawyer, I

18   respectfully decline to answer the question pursuant to

19   my Fifth Amendment rights as guaranteed to me by the

20   United States Constitution.

21   BY MS. BERLIN:

22       Q.   And when you made the statements to Mr. Damson

23   on August 17th, 2009, that you had executed the August

24   17th lock letter marked as Exhibit 4, you knew the

25   statements in that letter were false, correct?

BRICKELL KEY COURT REPORTING, LLC
305.407.9993

FRANK SPINOSA
9/16/2014

Page 89

1          MS. LOPEZ:  Objection as to form.
2     A.   Based upon the advice of my lawyer, I
3 respectfully decline to answer the question pursuant to
4 my Fifth Amendment rights as guaranteed to me by the
5 United States Constitution.
6 BY MS. BERLIN:
7     Q.   On September 10th, 2009, you participated in a
8 conference call with Scott Rothstein and Menachem
9 Lifshitz, correct?
10     A.   Based upon the advice of my lawyer, I
11 respectfully decline to answer the question pursuant to
12 my Fifth Amendment rights as guaranteed to me by the
13 United States Constitution.
14     Q.   On September 10th, 2009, you advised investor
15 Menachem Lifshitz by telephone that you had executed the
16 lock letter appearing as Exhibit 6 in this deposition,
17 correct?
18          MS. LOPEZ:  Objection as to form.
19     A.   Based upon the advice of my lawyer, I
20 respectfully decline to answer the question pursuant to
21 my Fifth Amendment rights as guaranteed to me by the
22 United States Constitution.
23 BY MS. BERLIN:
24     Q.   On September 20th, 2009, you met with Barrie
25 Damson and Kathleen White, correct?

FRANK SPINOSA
9/16/2014

Page 90

1          A.    Based upon the advice of my lawyer, I

2     respectfully decline to answer the question pursuant to

3     my Fifth Amendment rights as guaranteed to me by the

4     United States Constitution.

5          Q.    On September 20th, 2009, Kathleen White told

6     you that she was meeting with you to confirm a letter

7     bearing your signature dated August 17th concerning

8     Coquina Investments, correct?

9          A.    Based upon the advice of my lawyer, I

10    respectfully decline to answer the question pursuant to

11    my Fifth Amendment rights as guaranteed to me by the

12    United States Constitution.

13         Q.    On September 20th, 2009, you told Kathleen

14    White and Barrie Damson that you had, in fact, signed the

15    letter appearing as Exhibit 4 in this deposition,

16    correct?

17         A.    Based upon the advice of my lawyer, I

18    respectfully decline to answer the question pursuant to

19    my Fifth Amendment rights as guaranteed to me by the

20    United States Constitution.

21         Q.    On September 20th, 2009, you told Barrie

22    Damson and Kathleen White that the statements in the

23    letter marked as Exhibit 4 to this deposition were true;

24    isn't that correct?

25         A.    Based upon the advice of my lawyer, I

FRANK SPINOSA
9/16/2014

Page 91

1    respectfully decline to answer the question pursuant to

2    my Fifth Amendment rights as guaranteed to me by the

3    United States Constitution.

4        Q.   On September 20th, 2009, you told Barrie

5    Damson and Kathleen White that you would ensure that TD

6    Bank complied with the restrictions you stated in your

7    letter of August 17th, which is marked as Exhibit 4 to

8    this deposition; isn't that correct?

9        A.   Based upon the advice of my lawyer, I

10   respectfully decline to answer the question pursuant to

11   my Fifth Amendment rights as guaranteed to me by the

12   United States Constitution.

13       Q.   At all times you knew that the statements

14   about restrictions in your letters marked as Exhibit 4

15   through 11 and 13 through 15 to this deposition were

16   false; isn't that right?

17           MS. LOPEZ:   Objection as to form.

18       A.   Based upon the advice of my lawyer, I

19   respectfully decline to answer the question pursuant to

20   my Fifth Amendment rights as guaranteed to me by the

21   United States Constitution.

22   BY MS. BERLIN:

23       Q.   From no later than September 18th, 2009 until

24   at least October 15th, 2009, you prepared and executed at

25   least seven additional lock letters at Scott Rothstein's

FRANK SPINOSA
9/16/2014

Page 92

1   request, correct?

2      A.   Based upon the advice of my lawyer, I

3   respectfully decline to answer the question pursuant to

4   my Fifth Amendment rights as guaranteed to me by the

5   United States Constitution.

6      Q.   From no later than September 18th, 2009 until

7   October 15th, 2009, you executed lock letters identified

8   in this deposition as Exhibits 8 through 11 and 13

9   through 15, correct?

10      A.   Based upon the advice of my lawyer, I

11   respectfully decline to answer the question pursuant to

12   my Fifth Amendment rights as guaranteed to me by the

13   United States Constitution.

14      Q.   All right.  When you executed the letters

15   marked as Exhibits 8 through 11 and 13 through 15 of this

16   deposition you knew that Scott Rothstein would distribute

17   them to investors, correct?

18         MS. LOPEZ:  Objection as to form.

19      A.   Based upon the advice of my lawyer, I

20   respectfully decline to answer the question pursuant to

21   my Fifth Amendment rights as guaranteed to me by the

22   United States Constitution.

23   BY MS. BERLIN:

24      Q.   Scott Rothstein e-mailed you the draft

25   language for you to incorporate into the letters marked

FRANK SPINOSA
9/16/2014

Page 93

1    as Exhibits 8 through 11 and 13 through 15, correct?

2         A.    Based upon the advice of my lawyer, I

3    respectfully decline to answer the question pursuant to

4    my Fifth Amendment rights as guaranteed to me by the

5    United States Constitution.

6         Q.    You executed the letters marked as Exhibits 8

7    through 11 and 13 through 15 for purposes of having Scott

8    Rothstein distribute those letters to investors, correct?

9         A.    Based upon the advice of my lawyer, I

10   respectfully decline to answer the question pursuant to

11   my Fifth Amendment rights as guaranteed to me by the

12   United States Constitution.

13        Q.    When you executed the letters marked as

14   Exhibits 8 through 11 and 15, you knew your statements in

15   those letters concerning restrictions on the accounts

16   were false, correct?

17             MS. LOPEZ:   Objection as to form.

18        A.    Based upon the advice of my lawyer, I

19   respectfully decline to answer the question pursuant to

20   my Fifth Amendment rights as guaranteed to me by the

21   United States Constitution.

22   BY MS. BERLIN:

23        Q.    Would you please look at your Answer.  It's

24   Exhibit 17, paragraph 37.

25             Do you see where it reads:  Spinosa states

FRANK SPINOSA
9/16/2014

Page 104

1    my Fifth Amendment rights as guaranteed to me by the
2    United States Constitution.
3         Q.   At no time did you ever apply any procedures
4    to restrict any of the accounts identified in letters
5    marked as Exhibit 4 through 11 and 13 through 15,
6    correct?
7         A.   Based upon the advice of my lawyer, I
8    respectfully decline to answer the question pursuant to
9    my Fifth Amendment rights as guaranteed to me by the
10   United States Constitution.
11        Q.   When you executed each of the letters marked
12   as Exhibits 4 through 11 and 13 through 15, you knew that
13   Scott Rothstein could transfer funds from each of the
14   accounts without any restriction, correct?
15        A.   Based upon the advice of my lawyer, I
16   respectfully decline to answer the question pursuant to
17   my Fifth Amendment rights as guaranteed to me by the
18   United States Constitution.
19        Q.   When you executed the letters marked as
20   Exhibits 4 through 11 and 13 through 15, you knew that
21   Scott Rothstein could use TD Bank's Internet Customer
22   Banking System to transfer funds from all of the accounts
23   identified in Exhibits 4 through 11 and 13 through 15;
24   isn't that correct?
25             MS. LOPEZ:   Objection as to form.

FRANK SPINOSA
9/16/2014

Page 105

1          A.    Based upon the advice of my lawyer, I

2     respectfully decline to answer the question pursuant to

3     my Fifth Amendment rights as guaranteed to me by the

4     United States Constitution.

5     BY MS. BERLIN:

6          Q.    When you executed the letter marked as Exhibit

7     4 on August 17th, purporting to restrict the account

8     identified in that letter, you knew the representations

9     concerning restrictions were false?

10              MS. LOPEZ:   Objection as to form.

11         A.    Based upon the advice of my lawyer, I

12     respectfully decline to answer the question pursuant to

13     my Fifth Amendment rights as guaranteed to me by the

14     United States Constitution.

15     BY MS. BERLIN:

16         Q.    And you knew that every one of the letters

17     marked as Exhibits 4 through 11 and 13 through 15 were

18     false at the time you executed them because you knew

19     prior to August 17th, 2009, that you had never placed any

20     restrictions on any of the accounts, correct?

21              MS. LOPEZ:   Objection as to form.

22         A.    Based upon the advice of my lawyer, I

23     respectfully decline to answer the question pursuant to

24     my Fifth Amendment rights as guaranteed to me by the

25     United States Constitution.

FRANK SPINOSA
9/16/2014

Page 106

BY MS. BERLIN:

Q.   And, in fact, because you never placed any
restrictions on any of the accounts identified in the
letters marked as Exhibits 4 through 11 and 13 through
15, when you executed each of those letters you knew the
representations in them were completely false, correct?

MS. LOPEZ:  Objection as to form.

A.   Based upon the advice of my lawyer, I
respectfully decline to answer the question pursuant to
my Fifth Amendment rights as guaranteed to me by the
United States Constitution.

BY MS. BERLIN:

Q.   In fact, in August 2009, Rosanne Caretsky, who
worked with you at TD Bank, advised you that any of the
instructions purporting to lock the accounts for
Rothstein would have no effect; isn't that correct?

MS. LOPEZ:  Objection as to form.

MS. BERLIN:  What's the objection
specifically?

MS. LOPEZ:  You're assuming that this
conversation took place.

A.   Based upon the advice of my lawyer, I
respectfully decline to answer the question pursuant to
my Fifth Amendment rights as guaranteed to me by the
United States Constitution.

FRANK SPINOSA
9/16/2014

Page 107

1    BY MS. BERLIN:

2        Q.   In late August 2009, did Rosanne Caretsky

3    advise you that any lock instructions you put on to the

4    accounts would have no practical effect?

5        A.   Based upon the advice of my lawyer, I

6    respectfully decline to answer the question pursuant to

7    my Fifth Amendment rights as guaranteed to me by the

8    United States Constitution.

9        Q.   Isn't it true that in late August 2009,

10   Rosanne Caretsky, a coworker at TD Bank, advised you that

11   representations purporting to lock the accounts were

12   false because Scott Rothstein could still transfer the

13   money without TD Bank officials being alerted?

14       A.   Based upon the advice of my lawyer, I

15   respectfully decline to answer the question pursuant to

16   my Fifth Amendment rights as guaranteed to me by the

17   United States Constitution.

18       Q.   Isn't it true that after Rosanne Caretsky at

19   TD Bank told you that any representations purporting to

20   lock the accounts would be false, that you continued to

21   execute at least 10 more letters to investors purporting

22   to lock the accounts?

23       A.   Based upon the advice of my lawyer, I

24   respectfully decline to answer the question pursuant to

25   my Fifth Amendment rights as guaranteed to me by the

FRANK SPINOSA
9/16/2014

Page 108

1    United States Constitution.

2         Q.   Isn't it true that after Rosanne Caretsky at

3    TD Bank told you that the accounts could not be locked

4    and any representations about that were false, that you

5    went on to execute the letters marked today as Exhibits 5

6    through 11 and 13 through 15?

7         A.   Based upon the advice of my lawyer, I

8    respectfully decline to answer the question pursuant to

9    my Fifth Amendment rights as guaranteed to me by the

10   United States Constitution.

11        Q.   Mr. Spinosa, isn't it true that on August

12   17th, 2009, you participated in a conference call with

13   Scott Rothstein and Barrie Damson, who was an investor

14   with Scott Rothstein?

15        A.   Based upon the advice of my lawyer, I

16   respectfully decline to answer the question pursuant to

17   my Fifth Amendment rights as guaranteed to me by the

18   United States Constitution.

19        Q.   Isn't it true that prior to your phone call

20   with Scott Rothstein and Barrie Damson, that Scott

21   Rothstein e-mailed you a list of questions he would ask

22   you during that call about your lock letters and the lock

23   letter marked in this exhibit as Exhibit 4?

24        A.   Based upon the advice of my lawyer, I

25   respectfully decline to answer the question pursuant to

FRANK SPINOSA
9/16/2014

Page 109

1   my Fifth Amendment rights as guaranteed to me by the

2   United States Constitution.

3        Q.   Isn't it's true that on August 17th, Mr.

4   Rothstein told you to just answer "yes" to all of the

5   questions Mr. Damson asked?

6        A.   Based upon the advice of my lawyer, I

7   respectfully decline to answer the question pursuant to

8   my Fifth Amendment rights as guaranteed to me by the

9   United States Constitution.

10       Q.   Isn't it true you told Mr. Rothstein you would

11  go along with his plan and answer "yes" to all of the

12  questions asked during your August 17th, 2009 call with

13  Barrie Damson?

14       A.   Based upon the advice of my lawyer, I

15  respectfully decline to answer the question pursuant to

16  my Fifth Amendment rights as guaranteed to me by the

17  United States Constitution.

18       Q.   Isn't it true that on August 17, 2009, you

19  told Barrie Damson during a telephone call that the

20  letter marked as Exhibit 4 had, in fact, been executed by

21  you?

22       A.   Based upon the advice of my lawyer, I

23  respectfully decline to answer the question pursuant to

24  my Fifth Amendment rights as guaranteed to me by the

25  United States Constitution.

FRANK SPINOSA
9/16/2014

Page 110

1        Q.   Isn't it true, Mr. Spinosa, that during this

2   same call on August 17th with Barrie Damson and Scott

3   Rothstein, you told Mr. Damson that the investment

4   proceeds were in a restricted segregated account that

5   could only be disbursed directly to Coquina Investments?

6        A.   Based upon the advice of my lawyer, I

7   respectfully decline to answer the question pursuant to

8   my Fifth Amendment rights as guaranteed to me by the

9   United States Constitution.

10        Q.   Isn't it true, Mr. Spinosa, that on August

11   17th, 2009, you knew your representations to Barrie

12   Damson were false because you knew that Scott Rothstein

13   could transfer funds from the Coquina account without any

14   restrictions?

15        A.   Based upon the advice of my lawyer, I

16   respectfully decline to answer the question pursuant to

17   my Fifth Amendment rights as guaranteed to me by the

18   United States Constitution.

19        Q.   On September 10th, 2009, you participated in a

20   conference call with an investor, Lifshitz, correct?

21        A.   Based upon the advice of my lawyer, I

22   respectfully decline to answer the question pursuant to

23   my Fifth Amendment rights as guaranteed to me by the

24   United States Constitution.

25        Q.   Mr. Lifshitz had received the letter you

FRANK SPINOSA
9/16/2014

Page 111

1    executed and marked in this deposition as Exhibit 6,

2    correct?

3         A.    Based upon the advice of my lawyer, I

4    respectfully decline to answer the question pursuant to

5    my Fifth Amendment rights as guaranteed to me by the

6    United States Constitution.

7         Q.    And on September 10th, 2009, you advised

8    Investor Lifshitz that you had executed the letter marked

9    as Exhibit 6, and that the statements you made in Exhibit

10   6 were true, correct?

11        A.    Based upon the advice of my lawyer, I

12   respectfully decline to answer the question pursuant to

13   my Fifth Amendment rights as guaranteed to me by the

14   United States Constitution.

15        Q.    When you executed Exhibit 6 and when you spoke

16   with Investor Lifshitz on September 10th, 2009, you knew

17   the statements in Exhibit 6 were false, correct?

18             MS. LOPEZ:   Objection as to form.

19        A.    Based upon the advice of my lawyer, I

20   respectfully decline to answer the question pursuant to

21   my Fifth Amendment rights as guaranteed to me by the

22   United States Constitution.

23   BY MS. BERLIN:

24        Q.    When you spoke with Mr. Lifshitz by telephone

25   on September 10th, 2009, you knew that no restrictions

FRANK SPINOSA
9/16/2014

Page 112

1    had been placed on the account related to Erness Capital,

2    LLC, correct?

3              MS. LOPEZ:   Objection as to form.

4         A.   Based upon the advice of my lawyer, I

5    respectfully decline to answer the question pursuant to

6    my Fifth Amendment rights as guaranteed to me by the

7    United States Constitution.

8    BY MS. BERLIN:

9         Q.   Mr. Spinosa, did you tell Mr. Lifshitz on

10   September 10th, 2009, that you had executed the letter

11   marked as Exhibit 6?

12        A.   Based upon the advice of my lawyer, I

13   respectfully decline to answer the question pursuant to

14   my Fifth Amendment rights as guaranteed to me by the

15   United States Constitution.

16        Q.   Did you tell Investor Lifshitz on September

17   2009, that the account relating to Erness Capital had

18   been restricted?

19        A.   Based upon the advice of my lawyer, I

20   respectfully decline to answer the question pursuant to

21   my Fifth Amendment rights as guaranteed to me by the

22   United States Constitution.

23        Q.   Mr. Spinosa, did you tell investors in Scott

24   Rothstein's settlements that the letters marked as

25   Exhibits 4 through 11 and 13 through 15 were commonplace

FRANK SPINOSA
9/16/2014

Page 113

1   at TD Bank?

2        A.   Based upon the advice of my lawyer, I

3   respectfully decline to answer the question pursuant to

4   my Fifth Amendment rights as guaranteed to me by the

5   United States Constitution.

6        Q.   Did you tell investors in Scott Rothstein's

7   settlements that the transfer restrictions set forth in

8   the letters marked as Exhibits 4 through 11 and 13

9   through 15 were commonplace at TD Bank?

10       A.   Based upon the advice of my lawyer, I

11  respectfully decline to answer the question pursuant to

12  my Fifth Amendment rights as guaranteed to me by the

13  United States Constitution.

14       Q.   Isn't it true that TD Bank had never before

15  utilized a letter purporting to restrict accounts when

16  you drafted or when you executed the letters marked as

17  Exhibits 4 through 11 and 13 through 15?

18            MS. LOPEZ:  Objection as to form.

19       A.   Based upon the advice of my lawyer, I

20  respectfully decline to answer the question pursuant to

21  my Fifth Amendment rights as guaranteed to me by the

22  United States Constitution.

23  BY MS. BERLIN:

24       Q.   Isn't it true that TD Bank had never utilized

25  any letter representing that it was restricting transfers

FRANK SPINOSA
9/16/2014

Page 114

1   on accounts?

2        A.    Based upon the advice of my lawyer, I

3   respectfully decline to answer the question pursuant to

4   my Fifth Amendment rights as guaranteed to me by the

5   United States Constitution.

6        Q.    Isn't it true it was not commonplace at TD

7   Bank to put transfer restrictions on accounts using

8   letters?

9        A.    Based upon the advice of my lawyer, I

10  respectfully decline to answer the question pursuant to

11  my Fifth Amendment rights as guaranteed to me by the

12  United States Constitution.

13       Q.    Isn't it true that you knew, based on your

14  experience at TD Bank, that TD Bank never placed any

15  transfer restrictions on accounts?

16       A.    Based upon the advice of my lawyer, I

17  respectfully decline to answer the question pursuant to

18  my Fifth Amendment rights as guaranteed to me by the

19  United States Constitution.

20       Q.    Isn't it true that you knew prior to August

21  17th, 2009, that TD Bank did not place transfer

22  restrictions on accounts in the manner described in

23  Exhibits 4 through 11 and 13 through 15?

24       A.    Based upon the advice of my lawyer, I

25  respectfully decline to answer the question pursuant to

FRANK SPINOSA
9/16/2014

Page 115

1    my Fifth Amendment rights as guaranteed to me by the

2    United States Constitution.

3         Q.   Isn't it true that on August 17th, 2009, you

4    told Investor Barrie Damson that the letter marked as

5    Exhibit 4 was not unusual at TD Bank?

6         A.   Based upon the advice of my lawyer, I

7    respectfully decline to answer the question pursuant to

8    my Fifth Amendment rights as guaranteed to me by the

9    United States Constitution.

10        Q.   Isn't it true that on August 17th, 2009, you

11   told Barrie Damson in a telephone call that many accounts

12   at TD Bank had similar restrictions in place, such as

13   those described in the letter marked as Exhibit 4?

14        A.   Based upon the advice of my lawyer, I

15   respectfully decline to answer the question pursuant to

16   my Fifth Amendment rights as guaranteed to me by the

17   United States Constitution.

18        Q.   Isn't it true that on August 17th, 2009, you

19   told Investor Barrie Damson by telephone that TD Bank had

20   systems in place to ensure compliance with the

21   restrictions set forth in the letter marked as Exhibit 4?

22        A.   Based upon the advice of my lawyer, I

23   respectfully decline to answer the question pursuant to

24   my Fifth Amendment rights as guaranteed to me by the

25   United States Constitution.

FRANK SPINOSA
9/16/2014

Page 117

1   respectfully decline to answer the question pursuant to

2   my Fifth Amendment rights as guaranteed to me by the

3   United States Constitution.

4        Q.   Isn't it true that on September 14th, 2009,

5   you told Investor Lifshitz that TD Bank had systems in

6   place to ensure compliance with the restrictions set

7   forth in the letter marked as Exhibit 6?

8        A.   Based upon the advice of my lawyer, I

9   respectfully decline to answer the question pursuant to

10  my Fifth Amendment rights as guaranteed to me by the

11  United States Constitution.

12       Q.   Isn't it true that you made the same

13  representations to Mr. Lifshitz by phone on September

14  10th, 2009, that you did to him on September 14th, 2009?

15       A.   Based upon the advice of my lawyer, I

16  respectfully decline to answer the question pursuant to

17  my Fifth Amendment rights as guaranteed to me by the

18  United States Constitution.

19       Q.   Isn't it true that on September 20th, 2009 you

20  met in person with Scott Rothstein and investors, Barrie

21  Damson and Kathleen White, at TD Bank?

22       A.   Based upon the advice of my lawyer, I

23  respectfully decline to answer the question pursuant to

24  my Fifth Amendment rights as guaranteed to me by the

25  United States Constitution.

FRANK SPINOSA
9/16/2014

Page 118

1      Q.    Isn't it true that on September 20th, 2009,

2   you told Barrie Damson and Kathleen White that the

3   representations in the August 17th letter marked as

4   Exhibit 4 were not unusual at TD Bank, that many accounts

5   at the bank had similar restrictions in place and the

6   bank had systems in place to ensure compliance with the

7   restrictions in that letter marked as Exhibit 6?

8      A.    Based upon the advice of my lawyer, I

9   respectfully decline to answer the question pursuant to

10  my Fifth Amendment rights as guaranteed to me by the

11  United States Constitution.

12     Q.    Isn't it true that you had full access to the

13  Rothstein and RRA account information and balances at all

14  times?

15     A.    Based upon the advice of my lawyer, I

16  respectfully decline to answer the question pursuant to

17  my Fifth Amendment rights as guaranteed to me by the

18  United States Constitution.

19     Q.    Isn't it true, from the time Rothstein and RRA

20  accounts were opened at TD Bank until the time they were

21  closed, you had full access to the account information

22  and balances in those accounts?

23     A.    Based upon the advice of my lawyer, I

24  respectfully decline to answer the question pursuant to

25  my Fifth Amendment rights as guaranteed to me by the

FRANK SPINOSA
9/16/2014

Page 119

1      United States Constitution.

2           Q.   Isn't it true that on at least two occasions

3      you provided Rothstein investors with false account

4      balances?

5           A.   Based upon the advice of my lawyer, I

6      respectfully decline to answer the question pursuant to

7      my Fifth Amendment rights as guaranteed to me by the

8      United States Constitution.

9           Q.   Okay.  Isn't it true that on August 17th,

10     2009, you told Barrie Damson that the account for Coquina

11     Investments held 22 million dollars?

12          A.   Based upon the advice of my lawyer, I

13     respectfully decline to answer the question pursuant to

14     my Fifth Amendment rights as guaranteed to me by the

15     United States Constitution.

16          Q.   Isn't it true that on at least August 17th,

17     2009, you knew that Barrie Damson was an investor and

18     partner with Coquina Investments?

19          A.   Based upon the advice of my lawyer, I

20     respectfully decline to answer the question pursuant to

21     my Fifth Amendment rights as guaranteed to me by the

22     United States Constitution.

23          Q.   Isn't it true that on August 17th, 2009, you

24     told Investor Barrie Damson that the Coquina Investments

25     account held 22 million dollars because you knew Scott

FRANK SPINOSA
9/16/2014

Page 120

1   Rothstein had promised that amount to Barrie Damson and

2   Coquina Investments?

3       A.   Based upon the advice of my lawyer, I

4   respectfully decline to answer the question pursuant to

5   my Fifth Amendment rights as guaranteed to me by the

6   United States Constitution.

7       Q.   Isn't it true that on August 17th, 2009, when

8   you spoke with Barrie Damson, you knew that, in truth,

9   the account for Coquina Investments held a balance of no

10  more than $100?

11      A.   Based upon the advice of my lawyer, I

12  respectfully decline to answer the question pursuant to

13  my Fifth Amendment rights as guaranteed to me by the

14  United States Constitution.

15      Q.   Isn't it true that prior to you speaking with

16  Barrie Damson on August 17th, 2009, you accessed the

17  account balance for the Coquina Investments account and

18  therefore knew there was a balance of no more than $100

19  in that account?

20      A.   Based upon the advice of my lawyer, I

21  respectfully decline to answer the question pursuant to

22  my Fifth Amendment rights as guaranteed to me by the

23  United States Constitution.

24      Q.   Isn't it true that on August 17th, 2009, you

25  told Barrie Damson the Coquina Investments account held

FRANK SPINOSA
9/16/2014

Page 121

1    22 million dollars, when you knew the account really held

2    no more than $100?

3         A.    Based upon the advice of my lawyer, I

4    respectfully decline to answer the question pursuant to

5    my Fifth Amendment rights as guaranteed to me by the

6    United States Constitution.

7         Q.    Isn't it true that when you told Barrie Damson

8    his account held 22 million dollars on August 17th, that

9    it was for purposes of having him make additional

10   investments with Scott Rothstein?

11             MS. LOPEZ:   Objection as to form.

12             MS. BERLIN:   What's the exact objection?

13             MS. LOPEZ:   You're assuming that he told him

14   that.

15        A.    Based upon the advice of my lawyer, I

16   respectfully decline to answer the question pursuant to

17   my Fifth Amendment rights as guaranteed to me by the

18   United States Constitution.

19   BY MS. BERLIN:

20        Q.    When you met with him and spoke with Barrie

21   Damson on August 17th, 2009, the purpose of your

22   discussion with him was to have him invest more money

23   with Scott Rothstein; isn't that true?

24        A.    Based upon the advice of my lawyer, I

25   respectfully decline to answer the question pursuant to

FRANK SPINOSA
9/16/2014

Page 122

1   my Fifth Amendment rights as guaranteed to me by the

2   United States Constitution.

3        Q.   Isn't it true that you received compensation

4   and bonuses based on the size and amount in the Rothstein

5   and RRA accounts?

6        A.   Based upon the advice of my lawyer, I

7   respectfully decline to answer the question pursuant to

8   my Fifth Amendment rights as guaranteed to me by the

9   United States Constitution.

10       Q.   Isn't it true that you were assisting Scott

11  Rothstein so that you could receive more bonuses and more

12  compensation based on investors putting more money into

13  his accounts?

14       A.   Based upon the advice of my lawyer, I

15  respectfully decline to answer the question pursuant to

16  my Fifth Amendment rights as guaranteed to me by the

17  United States Constitution.

18       Q.   Isn't it true that on September 20th, 2009,

19  you met in person at TD Bank with Barrie Damson and

20  Kathleen White?

21       A.   Based upon the advice of my lawyer, I

22  respectfully decline to answer the question pursuant to

23  my Fifth Amendment rights as guaranteed to me by the

24  United States Constitution.

25       Q.   Isn't it true that on September 20th, 2009,

FRANK SPINOSA
9/16/2014

Page 123

1    you told Rothstein investors, Barrie Damson and Kathleen

2    White, that you were familiar with the transactions in

3    the Coquina Investments account, that the money in the

4    Coquina Investments account was safe and that Mr. Damson

5    and Ms. White had nothing to worry about?

6          A.    Based upon the advice of my lawyer, I

7    respectfully decline to answer the question pursuant to

8    my Fifth Amendment rights as guaranteed to me by the

9    United States Constitution.

10         Q.    Isn't it true that on September 29th, you told

11   Investors Barrie Damson and Kathleen White that the

12   Coquina Investments money at TD Bank was safe because the

13   provisions in the August 17th letter marked as Exhibit 4

14   were in place, restricting the movement of funds in the

15   account?

16         A.    Based upon the advice of my lawyer, I

17   respectfully decline to answer the question pursuant to

18   my Fifth Amendment rights as guaranteed to me by the

19   United States Constitution.

20         Q.    Isn't it true that prior to meeting with

21   Investors Barrie Damson and Kathleen White on September

22   20th, 2009, you viewed the balance in the Coquina

23   Investments account?

24         A.    Based upon the advice of my lawyer, I

25   respectfully decline to answer the question pursuant to

FRANK SPINOSA
9/16/2014

Page 124

1     my Fifth Amendment rights as guaranteed to me by the

2     United States Constitution.

3        Q.   Isn't it true that prior to speaking with

4     Investors Damson and White on September 20th, 2009, you

5     knew the Coquina Investments account showed a balance of

6     approximately $100 and that there were no restrictions on

7     the Coquina Investments account?

8        A.   Based upon the advice of my lawyer, I

9     respectfully decline to answer the question pursuant to

10    my Fifth Amendment rights as guaranteed to me by the

11    United States Constitution.

12       Q.   Isn't it true that on September 20th, 2009,

13    you told Investors Damson and White that the Coquina

14    Investments money in their account at TD Bank was safe

15    when, in fact, you knew that that account only had about

16    $100 in it?

17       A.   Based upon the advice of my lawyer, I

18    respectfully decline to answer the question pursuant to

19    my Fifth Amendment rights as guaranteed to me by the

20    United States Constitution.

21       Q.   Isn't it true that on September 20th, 2009,

22    you told Investors Damson and White that there were

23    transfer restrictions on the Coquina Investments account

24    when, in truth, you knew at that time that there were no

25    restrictions on the account?

FRANK SPINOSA
9/16/2014

Page 125

1      A.   Based upon the advice of my lawyer, I

2   respectfully decline to answer the question pursuant to

3   my Fifth Amendment rights as guaranteed to me by the

4   United States Constitution.

5      Q.   Isn't it true that on September 20th, 2009,

6   you provided Investors Damson and White with a false

7   sense of security about the Coquina Investments account

8   so that they would invest additional funds with

9   Rothstein?

10     A.   Based upon the advice of my lawyer, I

11  respectfully decline to answer the question pursuant to

12  my Fifth Amendment rights as guaranteed to me by the

13  United States Constitution.

14     Q.   Okay.   Isn't it true that you made false

15  representations to Rothstein's investors about the

16  transfer restrictions on their account so they would

17  invest more money and you would end up making more money,

18  in turn?

19     A.   Based upon the advice of my lawyer, I

20  respectfully decline to answer the question pursuant to

21  my Fifth Amendment rights as guaranteed to me by the

22  United States Constitution.

23     Q.   How much was your bonus from the Rothstein and

24  RRA accounts?

25     A.   Based upon the advice of my lawyer, I

FRANK SPINOSA
9/16/2014

Page 127

1    my Fifth Amendment rights as guaranteed to me by the

2    United States Constitution.

3         Q.   Isn't it true that Rothstein investor,

4    Menachem Lifshitz, met with you and Scott Rothstein in

5    Rothstein's law office on September 14th, 2009?

6         A.   Based upon the advice of my lawyer, I

7    respectfully decline to answer the question pursuant to

8    my Fifth Amendment rights as guaranteed to me by the

9    United States Constitution.

10        Q.   Isn't it true that on September 14th, 2009,

11   you told Menachem Lifshitz that 20 million dollars did

12   not appear as available funds in the Erness Capital

13   account because TD Bank was holding those funds in its

14   treasury direct wire queue for that account?

15        A.   Based upon the advice of my lawyer, I

16   respectfully decline to answer the question pursuant to

17   my Fifth Amendment rights as guaranteed to me by the

18   United States Constitution.

19        Q.   Isn't it true that on September 14th, 2009,

20   you told Rothstein, investor, Menachem Lifshitz, that 20

21   million dollars did not appear as available funds for

22   Erness Capital because TD Bank was holding those funds in

23   its treasury direct wire queue, but in fact you knew when

24   you made those statements that TD Bank was holding no

25   such funds?

FRANK SPINOSA
9/16/2014

Page 128

1      A.   Based upon the advice of my lawyer, I

2  respectfully decline to answer the question pursuant to

3  my Fifth Amendment rights as guaranteed to me by the

4  United States Constitution.

5      Q.   Isn't it true that on September 14th, 2009,

6  you knew that TD Bank was not holding any funds for

7  Erness Capital in its treasury direct wire queue?

8      A.   Based upon the advice of my lawyer, I

9  respectfully decline to answer the question pursuant to

10  my Fifth Amendment rights as guaranteed to me by the

11  United States Constitution.

12      Q.   Isn't it true that at all times that you were

13  regional vice president and employed with TD Bank you had

14  access to all of the accounts you managed and statements

15  showing the movement of all funds in the accounts?

16      A.   Based upon the advice of my lawyer, I

17  respectfully decline to answer the question pursuant to

18  my Fifth Amendment rights as guaranteed to me by the

19  United States Constitution.

20      Q.   Isn't it true that from the Rothstein and RRA

21  accounts at issue in the Amended Complaint were open

22  until the time they were closed, you had access to the

23  accounts and the records and statements showing the

24  movement of all funds in those accounts?

25      A.   Based upon the advice of my lawyer, I

FRANK SPINOSA
9/16/2014

Page 129

1    respectfully decline to answer the question pursuant to

2    my Fifth Amendment rights as guaranteed to me by the

3    United States Constitution.

4        Q.   Isn't it true that prior to meeting with

5    Investor Menachem Lifshitz on September 14th, 2009, you

6    accessed the account information for Erness Capital and

7    therefore knew that TD Bank was not holding any funds for

8    that account in it treasury direct wire queue?

9        A.   Based upon the advice of my lawyer, I

10   respectfully decline to answer the question pursuant to

11   my Fifth Amendment rights as guaranteed to me by the

12   United States Constitution.

13       Q.   Isn't it true that you never had any knowledge

14   that TD Bank was holding any funds for Erness Capital in

15   treasury direct wire queue?

16       A.   Based upon the advice of my lawyer, I

17   respectfully decline to answer the question pursuant to

18   my Fifth Amendment rights as guaranteed to me by the

19   United States Constitution.

20       Q.   Isn't it true on September 14th, 2009, you

21   told Rothstein investor, Menachem Lifshitz, that the

22   September 9th letter marked as Exhibit 6 irrevocably

23   restricted the movement of money in the RRA trust account

24   so it could only be transferred to the investor's

25   account?

FRANK SPINOSA
9/16/2014

Page 130

1          A.    Based upon the advice of my lawyer, I
2    respectfully decline to answer the question pursuant to
3    my Fifth Amendment rights as guaranteed to me by the
4    United States Constitution.
5          Q.    Isn't it true that from at least August 17th,
6    2009, you knew that the RRA did not contain the investor
7    settlement funds and that Rothstein had unrestricted
8    access to transfer funds from the accounts?
9          A.    Based upon the advice of my lawyer, I
10   respectfully decline to answer the question pursuant to
11   my Fifth Amendment rights as guaranteed to me by the
12   United States Constitution.
13         Q.    I wonder if you would please turn to Exhibit
14   16 and 17 to paragraph 50.  Do you see paragraph 50 of
15   the Amended Complaint reads:  Additionally, Spinosa made
16   false representations to investors orally about the
17   safety and security of the RRA accounts, and then it goes
18   on, if you'd like to just read it to yourself, that
19   paragraph?
20         A.    I do see it.
21         Q.    And then if you would look at your Answer,
22   Exhibit 17, at paragraph 50, do you see where your Answer
23   reads:  Spinosa states that any letters or e-mails
24   actually authored by Spinosa or actually signed by
25   Spinosa speak for themselves?

FRANK SPINOSA
9/16/2014

Page 149

1    Dear Scott, as per your request, attached is the most

2    recent bank statement from your RRA trust account.  I

3    won't read the account number on the record.  But then it

4    says:  You should also know that someone tried to contact

5    me again to obtain bank information about your firm's

6    trust accounts.

7            Do you see that?

8        A.   I do see that.

9        Q.   Okay.  So who was trying to contact you to

10   obtain bank information about Rothstein and RRA's

11   accounts?

12       A.   Based upon the advice of my lawyer, I

13   respectfully decline to answer the question pursuant to

14   my Fifth Amendment rights as guaranteed to me by the

15   United States Constitution.

16       Q.   Isn't it true, you were very concerned about

17   people accessing the true bank balances for the RRA trust

18   accounts because you knew that they would reflect

19   something far less than what you were telling investors?

20       A.   Based upon the advice of my lawyer, I

21   respectfully decline to answer the question pursuant to

22   my Fifth Amendment rights as guaranteed to me by the

23   United States Constitution.

24       Q.   If you would turn the page, please?  This is

25   an October 15th, 2009 letter from you to Scott Rothstein,

FRANK SPINOSA
9/16/2014

Page 150

1    correct?

2       A.    Based upon the advice of my lawyer, I

3    respectfully decline to answer the question pursuant to

4    my Fifth Amendment rights as guaranteed to me by the

5    United States Constitution.

6       Q.    And the second page of this letter is the

7    attached account balance you were sending Mr. Rothstein,

8    correct?

9       A.    Based upon the advice of my lawyer, I

10   respectfully decline to answer the question pursuant to

11   my Fifth Amendment rights as guaranteed to me by the

12   United States Constitution.

13      Q.    And you provided Mr. Rothstein with false

14   account documents to make it appear as though he had more

15   in his accounts than he did; isn't that true?

16      A.    Based upon the advice of my lawyer, I

17   respectfully decline to answer the question pursuant to

18   my Fifth Amendment rights as guaranteed to me by the

19   United States Constitution.

20              MS. BERLIN:  Just one moment, please.

21              (Recess taken at 3:50 p.m.)

22              (Back on the record at 4:00 p.m.)

23              MS. BERLIN:  Back on the record.

24              (PLAINTIFF'S COMPOSITE EXHIBIT 22,

25              COLLECTION OF DOCUMENTS)

FRANK SPINOSA
9/16/2014

Page 168

```
 1                    C E R T I F I C A T E

 2

 3    THE STATE OF FLORIDA)

 4    COUNTY OF MIAMI-DADE)

 5

 6           I, DIANNE N. SARKISIAN, a Court Reporter, do

 7    hereby certify that I was authorized to and did

 8    stenographically report the deposition of FRANK A.

 9    SPINOSA, a witness called in the above-styled cause; that

10    the witness was first duly sworn by me; that the reading

11    and signing of the deposition were waived by the witness;

12    that the foregoing pages constitute a true and complete

13    record of my stenographic notes.

14

15           I further certify that I am not an attorney or

16    counsel to any of the parties, nor related to any of the

17    parties, nor financially interested in the action.

18

19           Dated this 22nd day of September 2014.

20

21

22                         _____
                           Dianne N. Sarkisian
23                         Certified Court Reporter

24

25
```